WILLIAM WISEMAN, PLAINTIFF IN ERROR, *v.* ACHILLE CHIAPPELLA.

Where the notarial protest of a bill of exchange stated that the bill had been handed to him on the day it was due, that he went several times to the office of the acceptors of it in order to demand payment for the same, and that at each time he found the doors closed, and "no person there to answer my demand," this was a sufficient demand.

It was not necessary to call individually upon one of the partners of the firm who had a residence in the city, or to make any further inquiries for the acceptors, than the repeated calls at their office.

Cases can be found, and many of them, in which further inquiries than a call at the place of business of a merchant acceptor have been deemed proper; but the rulings in such cases will be found to have been made on account of some peculiar facts in them which do not exist in this case.

In making a demand for an acceptance, the party ought, if possible, to see the drawee personally, or some agent appointed by him, to accept; and diligent inquiry must be made for him, if he shall not be found at his house or place of business. But a demand for payment need not be personal, and it will be sufficient if it shall be made at one or the other place in business hours.

The cases upon these points examined.

When, upon presentment for acceptance, the drawee does not happen to be found at his house or counting-room, but is temporarily absent, and no one is authorized to give an answer, whether the bill will be accepted or not, in such case it would seem the holder is not bound to consider it as a refusal to accept, but he may wait a reasonable time for the return of the drawee.

He may present the bill on the next day, but this delay is not allowable in a presentment for payment. This must be made on the day the bill falls due; and if there be no one ready at the place to pay the bill, it should be treated as dishonored, and protested.

Presenting a bill, under such circumstances, at the place of business of the acceptor, will be *prima facie* evidence that it had been done at a proper time of the day. If that shall be denied, it must be shown by evidence.

Where a suit was brought against a notary in Louisiana for negligence in making a protest, he will be protected from responsibility by showing that the protest was made in conformity with the practice and law of Louisiana, where the bill was payable.

THIS case was brought up by writ of error from the Circuit Court of the United States for the eastern district of Louisiana.

It was an action brought by Wiseman against Chiappella, who was a notary public in New Orleans, upon the ground that he had been negligent in protesting a bill of exchange, and in consequence of such negligence Wiseman had lost the money. The question therefore was, whether or not he had been guilty of negligence. The question of prescription was also decided by the Circuit Court, and argued here, but it will not be further noticed.

The facts of the case are stated in the opinion of the court. The Circuit Court decided in favor of the defendant upon two grounds: 1st, that the protest was sufficient; 2d, that the action was prescribed.

It was argued in this court by *Mr. Benjamin* for the plaintiff in error, and by *Mr. Janin* for the defendant.

Upon the first ground, *Mr. Benjamin* said:

I. The protest was insufficient. Calling at the office of the acceptors of a bill, and finding it closed, is not such due diligence as will excuse the want of presentment and demand. There should have been inquiry, and effort should have been used to discover the dwelling, and demand made there, if found.

The necessity for due diligence is not questioned, but cases are cited, in the opinion of the court, to show that the action of the notary was sufficient to constitute due diligence. These cases seem to us not to warrant the inference drawn by the court, but rather to establish the reverse.

In the case of the Union Bank *v.* Foulkes, 2 Sneed Tenn. Rep., the court held, that want of presentment and demand was excused, because the place of business was open, but no one had been left there to answer; the court expressly stating that if it had been closed, further diligence would have been necessary.

In the case of Shed *v.* Brett, 1 Pick., 413 the court held that plaintiff must be nonsuited, if the demand at the place

of business was not proven to have been made in business hours; the protest in the present case does not allege any visit in business hours.

In the case of the Branch Bank at Decatur *v.* Hodges, 17 Ala. Rep., 42, there was actual presentment and demand of the book-keeper of the acceptors at their counting-room.

In the case of Brown *v.* Turner, 15 Ala. Rep., 832, there was actual demand of the agent of one partner, both partners being absent.

In Watson *v.* Templeton, 11 Annual Rep., 137, the court held, that as against a partnership, the want of demand was excused where the bill was presented at the commercial domicil, within the usual business hours, but reserved its opinion as to cases where a person does business alone, and has a dwelling as well as a place of business which is found closed. In support of this distinction between bills accepted by a firm and those accepted by individuals, the court cites Story on Promissory Notes, sec. 235; but we have sought in vain in the authority referred to, and elsewhere, for anything to sustain this distinction, which seems to be quite a novel doctrine in the law of bills and notes.

In Williams *v.* Bank of United States, 2 Peters, 96, and the case of Goldsmith and Bland therein cited and approved, there was, in the former case, further inquiry and information received, that the party and his family had left town on a visit; and in the latter there was no person in the counting-house in the ordinary hours of business, but the counting-house is not stated to have been closed, the implication being, on the contrary, that it was open.

The foregoing are all the authorities cited in the opinion of the Circuit Court, no one of which goes the length required to sustain the validity of the protest now in dispute.

The authorities to show its insufficiency are very numerous.

In McGruder *v.* Bank of Washington, 9 Wheaton, 601, there was no decision directly on the point; but the court said, in its reasoning, that the notary might, "had the house been shut up, with equal correctness have returned that he

had not found him, (the drawer,) and yet that clearly would not have excused the demand, unless followed by reasonable inquiries.

In Granite Bank *v.* Ayres, 16 Pick., 392, demand was made at the last place of business, and notary was informed that the parties had failed and gone out of town. They had in fact failed, and given up their place of business, but one of them lived in town. Held, diligence insufficient, no further inquiry having been made by notary.

In Ellis *v.* Commercial Bank of Natchez, 7 Howard's Mississippi Rep., 294, held, that further inquiry must be made when the place of business is found shut, in order to excuse want of presentment and demand.

In Follain *v.* Dupre, 11 Rob., 470, held, that going to the counting-house during the usual business hours, waiting a short time, and, no one being there, coming away, is not sufficient to excuse presentment for acceptance, and doubtful if sufficient to excuse want of presentment for payment.

In Collins *v.* Butler, 2 Strange, 1087, held, that when place of business is found closed, further inquiry for the drawer of a note or an attempt to find him must be shown, in order to excuse want of demand.

The rule as laid down by all the text writers is, that if the acceptors have absconded, and cannot be found, presentment and demand being impossible, the want of them is excused; but even where the acceptor has become bankrupt, or has removed to another place within the same State, or is absent on a journey, yet, if he has a dwelling, demand must be made there, in order to hold the other parties.

 Story on Promissory Notes, secs. 237, 238.
 Story on Bills, secs. 351, 352.
 Byles on Bills, pp. 141, 159.
 Chitty on Bills, pp. 355, 383.

The only cases where want of inquiry and effort to find party have been excused, are those where a place of payment is designated in the bill or note.

 Hine *v.* Alleby, 4 B. and Ad., 624.
 Buxton *v.* Jones, 1 Man. and Gran., 83.

*Mr. Janin* referred to the following cases quoted by the Circuit Court, namely:

Union Bank *v.* Foulkes, 2 Smead Tenn., 555.

Shed *v.* Brett Trustees, 1 Pick., 413.

Br. Bank at Decatur *v.* Hodges, 17 Ala. Rep., 42.

Brown *v.* Turner, 15 Ala. Rep., 832.

Burbank *v.* Beach, 15 Bak., 326.

The Louisiana case referred to by the Circuit Court, but not quoted, is the case of Watson *v.* Templeton, 11 Ann. Rep., 137.

Again, in Nott's Ex'r *v.* Beard, La. Rep., 308, the notary certified, that "at the request of the holder of the original draft, whereof a true copy is on the reverse hereof written, I demanded payment of said draft at the counting-house," &c. The counsel for the defendant contended that the protest should say that the bill was presented, and payment thereof demanded. The court held that this was not necessary, and said: "We are disposed to give such meaning to terms used by public officers as will be understood by the mass of mankind."

"The act of the Legislature, passed in 1827, vests notaries with certain powers in relation to these matters, and gives more authenticity to their acts than to private individuals. They are public officers, and the presumption of law is that they do their duty."

The following English cases support the same doctrine:

In Burton *v.* Jones, 1 Man. and Gr., 89, C. J. Tindal said:

"This bill drawn upon Epworth is addressed to him as Mr. Frederick Epworth, Ilnito St., Baal-Zepher St. Bennondsey. The drawee accepts generally, thereby adopting the description of his residence, as stated at the foot of the bill. When the bill becomes due, a messenger is sent to demand payment. The messenger inquires for Epworth of a person who must be taken to be an inmate, and from that person he receives an answer, which is true. It was not necessary to present the bill to Epworth personally. If he chose to remove from the house pointed out by the bill as his place of residence, he was bound to leave sufficient funds on the premises. In Hine *v*

Alleby, (4 B. and Adol., 624,) the holder went to the place at which the bill was addressed, and found the house shut up. This was held to be sufficient evidence of presentment."

In Hine v. Alleby, (4 B. and Adol., 627, and 24 Engl. Common Law Rep., 127,) it was shown that on the day when the bill became due, it was taken to the place of payment, but the house was shut up, and no further presentment could be made. The court held that there was a presentment. The case of Burbridge v. Marmers, 3 Campbell, 183, was cited, and it was urged that there Lord Ellenborough said: "I think the note was dishonored as soon as the maker had refused payment on the day when it became due;" and that here (that is, in Hine v. Alleby) the holder only concluded that the bill would not be paid, from finding no one at the house, and that there had been no refusal."

But, per curiam: "It is the same if the house is shut up and no one there. The case is in point."

The counsel for the plaintiff, indeed, endeavors to distinguish these cases from the one before the court, because the number of the acceptor's residence was there stated on the face of the bill. But while the courts evidently speak of well-known places where the presentment is to be made, they lay no stress upon the manner in which they became known. The proper place to present a bill to a firm is, undoubtedly, their counting-house; and whether that be known to the notary by the number of the house stated in the bill, or in any other positive manner, the reason of the thing and the conclusion must be the same. Here the notary knew the counting-house so well, and so positively, that he went to it several times.

Mr. Justice WAYNE delivered the opinion of the court.

The plaintiff in this action alleges that he is the holder and owner of a certain bill of exchange for two thousand and forty-five dollars forty-five cents, dated at Vicksburg, in the State of Mississippi, May 13th, 1855, and payable on the 23d November, 1855, which had been drawn by John A. Durden and A. Durden on William Langton & Co., of New Orleans, and accepted by them, payable to the order of Langton, Sears, &

Co., and by that firm endorsed in blank. He further declares that the bill, when it became due, was intrusted to the defendant, Achille Chiappella, a commissioned notary public for the city of New Orleans, to demand payment of it from the acceptors, and to protest the same for non-payment, should the acceptors dishonor it; and that, from his carelessness in not making a legal demand of the acceptors, and from not having expressed it in the protest, that the endorsers of the bill had been discharged from their obligation to pay it, by a judgment of the Circuit Court of the United States for the southern district of Mississippi. He further alleges that the acceptors, payees, and endorsers, were insolvent, and that, from the insufficiency of the demand for payment to bind the drawers of the bill, the defendant had become indebted to him for its amount, with interest at the rate of five per cent. from the day that it became due, the 23d November, 1855.

The defendant certifies in his notarial protest that the bill had been handed to him on the day it was due; that he went several times to the office of the acceptors of it, in Gravier street, in order to demand payment for the same, and he found the doors closed, and "no person there to answer my demand." It also appeared that one of the firm by which the bill had been accepted had a residence in New Orleans; that no demand for payment had been made individually upon him; and that no further inquiry had been made for the acceptors than the repeated calls which the notary states he had made at their office.

We think, under the circumstances, that such repeated calls at the office of the acceptors was a sufficient demand; that further inquiry for them was not required by the custom of merchants; and that the protest, extended as it had been, is in conformity with what is now generally considered to be the established practice in such matters in England and the United States. We say, under the circumstances, for, as there is no fixed mode for making such a demand in all cases, each case as it occurs must be decided on its own facts.

We have not been able to find a case, either in our own or in the English reports, in which it has been expressly ruled

that a merchant, acceptor of a foreign bill of exchange, having a notorious place of business, has been permitted to close it up during the business hours of the day, thus avoiding the obligation of his acceptance on the day of its maturity, and then that he was allowed to claim that the bill ought to have been presented to him for payment elsewhere than at his place of business. Though such conduct is not absconding, in the legal sense of that word, to avoid the payment of creditors, it must appear, when unexplained, to be an artifice inconsistent with the obligations of an acceptor, from which the law will presume that he does not intend to pay the bill on the day when it has become due.

The plaintiff in this case does not deny that the office of the acceptors was closed, as the notary states it to have been. The only fact upon which he relies to charge the defendant with neglect is, that one of the firm of Langton, Sears, & Co. resided in New Orleans, and that it was the duty of the notary to have made inquiry for him at his residence. No presumption, under such circumstances, can be made, that the acceptors had removed to another place of business, or that they were not intentionally absent from it on the day that they knew the bill was payable. This case, then, must be determined on the fact of the designed absence of the acceptors on that day; and that inference is strengthened by no one having been left there to represent them.

All merchants register their acceptances in a bill book. It cannot be presumed that they will be unmindful of the days when they are matured. Should their counting-rooms be closed on such days, the law will presume that it has been done intentionally, to avoid payment, and, on that account, that further inquiries need not be made for them before a protest can be made for non-payment.

Cases can be found, and many of them, in which further inquiries than a call at the place of business of a merchant acceptor has been deemed proper, and in which such inquiries not having been made, has been declared to be a want of due diligence in making a demand for payment; but the rulings in such cases will be found to have been made on account of

some peculiar facts in them which do not exist in this case. And in the same class of cases it has been ruled that the protest should contain a declaration by the notary that his call to present a bill for payment had been made in the business hours of the day; but in no case has the latter ever been presumed in favor of an acceptor, whose place of business has been so closed that a demand for payment could not be made there upon himself or upon some one left there to attend to his business.

Lord Ellenborough said, in the case of Cross *v.* Smith, 1 M. and S., 545: "The counting-house is a place where all appointments respecting business and all notices should be addressed; and it is the duty of the merchant to take care that proper persons shall be in attendance." It was also ruled in that case, that a verbal message, imparting the dishonor of a bill, sent to the counting-house of the drawer during the hours of business, on two successive days, the messenger knocking there, and making a noise sufficient to be heard within, and no one coming, was sufficient notice.

In this case the facts were, that Fea & Co. had a counting-house at Hull, where they were merchants, and one lived within one mile and the other within ten miles of Hull. The Monday after Smith & Co. received the bill, their clerk went to give notice, and called at the counting-house of Fea & Co. about half after ten o'clock. He found the outer door open; the inner one locked. He knocked so that he must have been heard, had any one been there, waited two or three minutes, and went away; and on his return from the counting-room he saw Fea & Co.'s attorney, and told him. The next Monday he went again at the same hour, but with no better success. No written notice was left, nor was any notice sent to the residence of either of the parties. The court took time to consider, and then held, without any reference to the clerk having called at the counting-house two successive days, that going to the counting-house at a time it should have been open was sufficient, and that it was not necessary to leave a written notice, *or to send to the residence of either of the parties.*

In Bancroft and Hall, Holt, 476, the plaintiff received notice

of the bill's dishonor at Manchester, 24th May. The same day he sent a letter by a private hand to his agent at Liverpool, to give defendant notice. The agent called at the defendant's counting-house about six or seven P. M.; but the counting-house was shut up, and the defendant did not receive notice of the dishonor of the bill until the morning of the 27th—Monday. Two points were ruled: 1st. That sending by a private hand to an agent to give notice was sufficient; 2d. That it was sufficient for the agent to take the ordinary mode to give notice—the ordinary time of shutting up was eight or nine. Where the endorser of a note shut up his house in town soon after the note was made, and before it became due, and retired to his house in the country, intending, however, only a temporary residence in the country, it was held that a notice left at his house, by having been put into the key-hole, was sufficient to charge him. Stewart *v.* Eden, 2 Can. R., 121.

This court held, in Williams *v.* the Bank of the United States, 2 Peters, that sufficient diligence had been shown on the part of the holder of a note to charge the endorser, under the following circumstances: A notary public employed for the purpose called at the house of the endorser of a note, to give him notice of its dishonor; and finding the house shut and locked, ascertained from the nearest resident that the endorser and his family had left town on a visit. He made no further inquiry where the endorser had gone, or how long he was expected to be absent, and made no attempt to ascertain whether he had left any person in town to attend to his business, but he left a notice of the dishonor of the note at an adjoining house, requesting the occupant to give it to the endorser upon his return.

In making a demand for an *acceptance*, the party ought, if possible, to see the drawee personally, or some agent appointed by him to accept; and diligent inquiry must be made for him, if he shall not be found at his house or place of business; but a demand for payment need not be personal, and it will be sufficient if it shall be made *at one or the other place, in business hours.* Chitty, 274, 367.

*Wiseman v. Chiappella.*

It was formerly the practice, if the house of the acceptor was shut up when the holder called there to present the bill for payment, and no person was there to represent him, and it appeared that he had removed, that the holder was bound to make efforts to find out to what place he had removed, and there make a payment. Such, however, is no longer the practice either in England or in the United States, nor has it been in the United States for many years. It is now sufficient if the bill shall be taken to the residence of the acceptors, as that may be stated in the bill, for the purpose of demanding payment, and to show that the house was shut up, and that no one was there. Hine *v.* Alleby, 4 B. and Adol., 624. It has been decided by the Supreme Court in Tennessee, that the protest of a foreign bill of exchange, drawn upon a firm in New Orleans, with no place of payment designated, where it appeared that the deputy of a regularly commissioned notary had called several times at the office of the acceptors to make demand of payment, but found no one there of whom the demand could be made, was sufficient to excuse a demand, and to fix the liability of the endorsers to whom notice had been given. Union Bank *v.* Jeptha Fowlkes et al., 555. The Supreme Court of Louisiana, in Watson *v.* Templeton, 11 Annual, 137, declares "that a demand made within the usual hours of business at the commercial domicil of a partnership, for the payment of a note or bill due by the firm, is a sufficient presentment; that it was not necessary to make a further demand at the private residences of individual persons. The place of business is the domicil of *the firm*, and it is their duty to have suitable persons there to receive and answer all demands of business made at that place." Going with a promissory note, to demand payment, to the place of business of the notary, in business hours, and finding it shut, is using due diligence. 1 Pick., Shed *v.* Brett, 413.

In the case of the B. B. at Decatur *v.* Hodges, the Supreme Court of Alabama say: "The court below excluded the protest for non-payment, because the presentment is stated thereon to have been made of the book-keeper of the drawees in their counting-room, they being absent. This was erroneous.

The bill was presented at the place of business of the firm, at their counting-room. If they had intended to pay the bill, it was their duty to have been present on the day of payment, or to have left means for making such payment in charge of some one authorized to make it. The notary finding them absent from their place of business, and their book-keeper there, might well make protest of the dishonor of the bill for non-payment upon presentment to and refusal by him." When, upon presentment for acceptance, the drawee does not happen to be found at his house or counting-room, but is temporarily absent, and no one is authorized to give an answer whether the bill will be accepted or not, in such case it would seem the holder is not bound to consider it as a refusal to accept, but he may wait a reasonable time for the return of the drawee. He may present the bill on the next day, but this delay is not allowable in a presentment for payment. This must be made on the day the bill falls due; and if there be no one ready at the place to pay the bill, it should be treated as dishonored, and protested. Story on Bills, sec. 250; Chitty on Bills, 9 Ed., 400. The Supreme Court of New York has ruled that where a notary's entry case states that presentment and demand were made at the maturity of a bill, at the office of C. & S., the acceptors, this language imports that the office was their place of business, and it will be presumed in favor of the notary, that the time in the day was proper. Burbank, President of Eagle Bank of Rochester, *v.* Beach and others; 15 Barbour, 326.

The preceding citation is in conformity with what the Supreme Court of New York had ruled thirteen years before, in the case of the Cayuga Bank *v.* Hart, 2 Hill, 635. Its language is, that where a notarial certificate of a protest of a bill of exchange stated a presentment for payment at the office of an acceptor, on the proper day, and that the office was closed, but *was silent as to the hour of the day of doing the act, that it was sufficient, and that regularity in that particular should be presumed.*

We infer, from all the cases in our books, notwithstanding many of them are contradictory to subsequent decisions, that the practice now, both in England and the United States, does

not require more to be done, in the presentment of a bill of exchange to an acceptor for payment, than that the demand should be made of a merchant acceptor at his counting-room or place of business; and if that be closed, so in fact that a demand cannot be made, or that the acceptor is not to be found at his place of business, and has left no one there to pay it, that further inquiry for him is not necessary, and will be considered as due diligence; and that presenting a bill under such circumstances at the place of business of the acceptor will be prima facie evidence that it had been done at a proper time of the day. If that shall be denied, it must be shown by evidence.

But whatever may have been the differences between cases upon this subject, both in England and the United States, there has always been a requirement in both countries, and everywhere acknowledged in the United States, which protects the defendant in this suit from any responsibility to the plaintiff. The requirement is this: that the protest was made in this case in conformity with the practice and law of Louisiana, where the bill was payable. Rothschild *v.* Caine, 1 Adol. and Ell., 43; 11 Smedes and Marshall, 182.

We are aware of the contrariety of opinion which prevailed for many years in regard to what should be considered due diligence in making a presentment of a bill of exchange for payment to an acceptor of it, under such circumstances as are certified to by the notary in this case. We have carefully examined most of them, from the case of Cotton *v.* Butler, in Strange, 1086, to the year 1856, and we have adopted those of later years as our best guide, and as having a better foundation in reason for the practice and the commercial law of the present day, and because we think it has mostly prevailed in the United States for thirty years.

As the view which we have taken of this case disposes of it in favor of the defendant, we shall not notice another point made in the argument in his behalf, which was, that the plaintiff's right of action, if he ever had one against the defendant, was excluded by the Louisiana law of prescription.

We direct the affirmance of the judgment of the Circuit Court.