WILLIAM J. MILLS and wife, and others v. THE SALISBURY BUILD-
ING AND LOAN ASSOCIATION.

There is no device or cover, by which "Building and Loan Associations"
can take from those who borrow their money, more than the legal rate
of interest, without incurring the penalties of our usury laws. Calling
the borrower "a partner," or substituting "redeeming" for "lending,"
or "premium" for "bonus," for an amount they profess to have ad-
vanced, and yet withhold; or "dues" for interest, or any like subterfuge
will not avail. The Court look at the substance.

This was a Civil Action heard before Cloud, J., at Cham-
bers, in Forsythe County, on the 24th day of May, 1876.

The summons was issued on the 12th day of May, 1876,
returnable to the Superior Court of Rowan County. On
that day the plaintiff filed an affidavit substantially as fol-
lows:

1. That the defendant is a corporate body duly created
under an Act of the General Assembly of North Carolina.

2. The plaintiff, W. J. Mills, took three shares of stock in
said corporation, of the nominal value of six hundred dol-
lars, and by the terms of said contract said plaintiff was
paid in cash the sum of $300, and in the time of eight
months he was required to pay the sum of $69.69, by way
of interest and fines. Said shares of stock were taken on
the 1st day of June, 1874, when said advancement was
made, and that by reason of this exorbitant interest, it
greatly exceeded eight per cent., and is more than 20 per
cent. upon said shares of stock. Apart from the fines and
dues imposed plaintiff was charged $48.00, as interest for
eight months, commencing Sept. 7th, 1775, and ending in
April, 1876, whereas the rate of interest is sixteen per cent.,
or thereabout.

3. On the —— day of ———, 1874, the plaintiffs executed
to the defendant a mortgage upon a lot situated in the town

Mills and others *v.* Salisbury Building and Loan Association.

of Salisbury, to secure the payment of the sum of $300, advanced as aforesaid.  The defendant has advertised said lot, to be sold on the 15th inst., to pay off and satisfy said mortgage, and plaintiffs say that said sale will take place, unless defendant is restrained therefrom by an order of this court.

4. That the plaintiffs are advised and believe that the demand of the defendant is based upon a grossly usurious contract.

Upon motion based upon the foregoing affidavit, and without notice, his Honor directed an order to be issued restraining the defendant from selling the said land until the further order of the court.

The cause was heard before his Honor on the 24th day of May, 1876, upon a motion by the defendant to dissolve the restraining order theretofore granted.  The following facts were admitted:

The defendant is a corporation duly created and organized on the 2d day of March, 1874, under an Act of the General Assembly authorizing the incorporation of "Homestead & Building Associations in this State," ratified the 25th day of March, 1872.  The plaintiff, W. J. Mills, joined said association at its organization, and at that time subscribed for and became the owner of five shares of the stock thereof, of the ultimate par value of $200 per share, by agreeing to pay one dollar per month on each share, until the dissolution of said corporation; but according to the by-laws, said plaintiff, in November, 1874, withdrew two of said shares, and received the cash value thereof from the defendant.  Said plaintiff is now and has always been a member and stockholder of said corporation, and is entitled to all the privileges of such member, and to a full participation in the profits of the association.

On the 1st Monday in June, 1874, the plaintiff attended the regular monthly meeting of the stockholders, when three shares of the stock of the corporation, of the ultimate

par value of six hundred dollars were offered for redemption, and put up at auction to the highest bidder among the members of the corporation. None but members were allowed to bid. The plaintiff bid the sum of $221 as a premium or bonus for the privilege of having an advance of $600, made by the corporation to him, on account of the redemption of his stock, and the defendant did advance said sum of $600, the ultimate par value of said three shares, and the amount which the plaintiff would ultimately have been entitled to receive from said corporation at the maturity of said shares. In consideration of these facts, the plaintiff, as he had agreed to do, paid to the defendant said premium of $221, and executed to the defendant a mortgage, signed by all of the plaintiffs, upon the real estate aforesaid, for the purpose of securing the payment of the unpaid instalments, thereafter to be paid, at the rate of one dollar per share upon each of said shares so redeemed, together with interest at the rate of six *per centum per annum*, upon the sum of six hundred dollars, payable monthly, and also to secure the payment of such fines and penalties, for the non-payment of said dues and interest as should at any time be prescribed by the Articles of Association of said corporation. The plaintiff promptly paid the regular instalments and interest up to and including the first Monday night in August, 1875, the same being three dollars per month for dues and three dollars per month for interest. Since that time the plaintiff has failed to pay either the interest or dues upon said shares of stock. For the eight months ending April 4th, 1876, the plaintiff is charged on the books of the defendant, as follows:

| | |
|---|---:|
| To monthly dues on three shares of stock, | $24 00 |
| " interest on advancement, | 24 00 |
| " fines for non-payment of fines and interest, | 21 60 |
| | $69 60 |

At that time his account with the defendant stood thus:

### Dr.

| | | |
|---|---:|---:|
| To advancement on account of the redemption of three shares of stock, | $600 | 00 |
| To monthly dues in arrears, | 24 | 00 |
| " interest, | 24 | 00 |
| " fines for the non-payment of dues and interest, | 21 | 60 |
| | $669 | 60 |

### Cr.

| | | | | |
|---|---:|---:|---:|---:|
| By premium to be returned, | $177 | 00 | | |
| " the withdrawing value of three shares, to be returned, | 86 | 88 | $263 | 88 |
| | | | $405 | 72 |

Upon the hearing, his Honor being of the opinion that the affidavits disclosed an usurious contract, refused the motion, and continued the injunction until the hearing. From this ruling the defendant appealed.

*J. S. Henderson,* for the appellant.
*J. M. McCorkle, Shipp & Bailey,* contra.

Reade, J. We have the following statute headed, "Building Associations:"

"Whereas, divers persons, chiefly of the industrial classes, are desirous of forming associations for the purpose of accumulating by small periodical deposits, a savings fund, with which they may secure a homestead, and for their mutual benefit; and whereas, it is the dictate of a sound policy that the protection and encouragement of the legislature should

be given to associations having in view ends and objects so commendable in their character ; therefore,

1. From and after the passage of this act it shall and may be lawful, and authority is hereby given to any individuals or persons, in any city or county in the State, under any name by them to be assumed, to associate for the purpose of organizing and establishing homestead and building associations, and being so associated, shall, on complying with the provisions of this chapter, be a body politic and corporate, &c." And then the statute proceeds in the usual way to authorize the Association to hold property, make by-laws and transact business. Bat. Rev., chap. 12.

The declared object of the Legislature is to enable and to encourage persons, chiefly poor persons, to save and deposit their littles, and when sufficiently accumulated, to draw them out in bulk and secure homesteads. This is a most beneficent act, and it is our duty and our pleasure to sustain it. Although not within the letter of the act, it would doubtless be within its spirit, if the associations were so organized, that instead of a member in all cases waiting to pay in by littles and take out in bulk, he could, at the beginning of his connection with the Association, take out in bulk and pay back by littles. And that is what the defendant says the plaintiff did in this instance. If so, and the contract is otherwise legitimate, it will be our duty to sustain it. In considering the subject it is to be noticed to the prejudice of the defendant that, instead of making its plans and by-laws exceedingly plain, to be understood by plain men, they are exceedingly complicated, so that they cannot be understood at all by plain men, and are explained with great labor, as the twenty-five pages of brief in this case will show to men accustomed to abstruse investigations.

Depositing, borrowing, lending, paying and interest are familiar terms used in money transactions ; but they have substituted unusual words, with perverted meanings, known

only in their vocabulary, and they say that we must look *there* for their meaning. But we must use language, which in its common acceptation, will explain the transaction between the parties.

The plaintiff borrowed of the defendant $379, and received that sum in actual cash. To secure the payment thereof he executed to the defendant his bond, not for $379, but for $600, and a mortgage upon land to secure, not the $379 and interest thereon, but the interest on $600, and an additional six per cent., which they call "dues," but which is only another name for interest. So that the plaintiff agrees to pay twelve per cent. interest upon $600 in monthly installments, which is equal to about nineteen per cent. interest upon $379, the amount which he borrowed. Although this looks bad in the beginning for the plaintiff, yet he is assured that in the end it will work out well; for, after he shall have paid this nineteen per cent. for eight, nine, ten, or some indefinite number of years, he will not be required to pay any more, but his bond and mortgage will be surrendered and he will be discharged from all further liability.

Now, from a calculation which we have made, approximating accuracy, it appears that if the plaintiff is discharged at the end of eight years, the shortest period which the defendant names, he will have paid about ten and a half per cent. upon the amount borrowed. And, if held longer, the rate of interest is increased in proportion to the time. So that it is really in the power of the defendant by prolonging the time, to oppress the plaintiff indefinitely. And all this is upon the supposition, most favorable to the plaintiff, that he will be able to pay up his monthly installments at the rate of nineteen per cent. upon the amount borrowed, or twelve per cent. upon the $600; for the moment he fails to pay his monthly installments, they begin to impose "fines and penalties" upon him which are added to the twelve or nineteen per cent; so that the less straw he

has the more bricks they require. How burdensome these
fines are will appear from the fact that for eight months, in
which he failed to pay his monthly installments, the in-
terest is $24, the dues $24, and the fines $21.60. So that at
a time when he could not pay at all, they required him to
pay about twenty-five per cent. interest upon the sum bor-
rowed. Failing to meet this demand upon him, the plain-
tiff's land is advertised for sale under the mortgage.

This whole proceeding is so unconscionable that no one
would ever recognize it as within the purview of the very
beneficent statute which we have quoted, and under which
it professes to operate.

We are told that these Associations are common in Europe
and in many of our sister States. We are aware of it.
They *commenced* in Europe under as simple legislation as
ours, but were soon perverted. The same may be said of
them in America. They are numerous and influential.
They influence legislation. By their liberal advertising
they influence the press. And even the Courts may be in-
sensibly affected. We are told by defendant's counsel that
there are already forty in this State with a capital of one
million five hundred thousand dollars, and we are already
urged that the business is too large to be disturbed. As
other vices spread, so does this. And it is our purpose to
" nip it in the bud " in this State, and save our people, not
from Associations properly conducted, (and we are informed
that there are such) but from those which seek to enforce
unconscionable contracts, and from those which violate our
usury laws. This not being a trial of the case upon its
merits, but only a question as to the propriety of continuing
the injunction against a sale under the mortgage until the
final hearing, we have said more than was absolutely neces-
sary to say now ; but we have done so because it was the
desire of the defendant, as it is of other like Associations,
that we should express our views, if they have been formed,

MILLS and others *v.* SALISBURY BUILDING AND LOAN ASSOCIATION.

as they have been upon pretty full consideration. But still, the profession will understand that the general question is open. We know of no device or cover by which these Associations can take from those who borrow their money more than the legal rate of interest without incurring the penalties of our usury laws. Calling the borrower "a partner," or substituting "redeeming" for lending; or "premium or bonus," for an amount which they profess to have advanced, and yet withhold; or "dues" for interest, or any like snbterfuges, will not avail. We look at the substance.

If the parties should desire to settle upon the basis of what we have intimated, there will be an account stated, charging the plaintiiff with $379.00, and interest at six per cent., that being the rate agreed on up to the time of stating the account. He will then have credit for all the interest, dues and fines, and all other payments, if any, which he has made, with interest thereon from the time the payments were made. And the balance will be the amount due the defendant. This will be a charge upon the land under the mortgage, and for it the land may be sold after reasonable time.

It is suggested that the plaintiff ought not to have credit for the *fines* paid, because they were imposed for his default in not paying interest and dues. True, they were so imposed, but then the interest and dues were unlawful, and they had no right to require him to pay them, or to fine him for not doing an unlawful thing.

There is no error. This will be certified.

PER CURIAM. Judgment affirmed.