ROWLAND v. OLD DOMINION BUILDING AND LOAN
ASSOCIATION et al.

*Building and Loan Associations—Foreclosure. of Mortgage—
Credit for Payments on Stock.*

1. A contract by which the stock taken out by a borrower, and assigned
   to the association, when the mortgage is executed, is forfeited to
   the association on default, without allowance of credit on the mort-
   gage for the payments made on the stock, is unconscionable, and,
   though upheld by the laws of the association's own State, will not
   be enforced in North Carolina.

2. When the foreclosure has realized enough to pay the sum borrowed,
   with interest at the rate stipulated on the face of the mortgage,
   and expenses, and the association has allowed nothing for pay-
   ments made by the borrower on his stock, which he assigned to
   the association when he made the mortgage, such assignment is to
   be treated as merely a pledge of additional security for the loan,
   and the borrower is entitled to a return of the stock.

3. When the mortgagor and his land were in North Carolina, and he
   there applied for a loan to a Virginia association having a local
   board of managers and treasurer, and there executed the mort-
   gage, the North Carolina usury laws apply, though the application
   was sent to the home office, and the money remitted from there,
   and the bond is payable there, and the local board and treasurer
   are styled agents, not of the association, but of the local members.

Appeal from Superior Court, VANCE County; *Bryan, Judge.*
Action by W. H. Rowland against the Old Dominion
Building and Loan Association, a Virginia corporation, and
T. M. Pittman, for an accounting. From the judgment on
report of referee, Pittman appealed.

*Messrs. Pittman & Shaw,* for appellant.
*Mr. H. T. Watkins,* for defendant association.

BURWELL, J.: The defendant association is a corporation
of the State of Virginia. Its home or principal office is in

Richmond, in that State. It organized a branch of its business at Henderson, in this State, and there had what is styled a "local board" of officers or managers. One Noell, of Vance County, applied, through the local board, to the home office, for a loan of $1,000, on May 31, 1890, "upon bond and mortgage of the property" mentioned and described in his application. He stated in his said application that he understood he was to pay, if he secured the loan, the necessary expenses of securing the repayment of the money, including the charges of counsel for examining title and preparing securities, and that he would furnish an abstract of title. This application was accompanied by a certificate of the local board that the property offered as security was worth $1,500, and that the loan was one which it was desirable for the association to make. In order that he might have the privilege of borrowing money from this association, it was necessary that he should become one of its stockholders; and it seems that, at this stage of the business, it was required of those who would be borrowers that they should subscribe for stock whose par value was double the sum proposed to be borrowed. And so Noell subscribed for twenty shares of the stock, par value $2,000, in order to get a loan of $1,000. He then received the sum loaned him ($1,000), and secured its repayment to the association, with six per cent. interest thereon, and also the payment of installments due on the stock subscribed for (sixty cents per share each month till the stock was worth par), by a deed of trust on his property mentioned in his aforesaid application, and worth $1,500. At the same time, and as a part of the same transaction, he executed the following paper:

"For value received, I hereby assign to Old Dominion Building and Loan Association twenty shares capital stock therein, this day redeemed at $50 per share.

"Witness my hand, this 7th day of July, 1890.
                    (Signed)                    "T. A. NOELL."

ROWLAND *v.* BUILDING ASSOCIATION.

We gather from the record that this Virginia corporation insists that, by virtue of these contracts and this conveyance in trust, it has the right to exact from this borrower, in return for the $1,000 loaned him, payments on twenty shares of stock, at $12 per month, until the stock reached the par value of $2,000, and also $5 per month interest on the sum borrowed until the same time, and also fines for lack of the promptness prescribed in the by-laws of the association for the payment of these dues. Considered apart from all questions about expected profits, the contention of this association is that this borrower has agreed to pay back the money borrowed, with six per cent. interest, and then to give it, in addition, a bonus of $1,000 for making the loan, and when this is done it will call the game over, and quit. Upon such a settlement, the account would stand thus:

| | | | |
|---|---|---|---|
| The association loans _____ | | | $1,000 |
| It receives entrance fees_____ | $ | 20 | 00 |
| Appraisers and attorney's fee _____ | | 15 | 00 |
| Interest on $1,000 at six per cent., $5 per month for 166⅔ months _____ | | 833 | 33 |
| Dues at 60 cents per share per month till they amount to $100 per share _____ | | 2,000 | 00 |
| Total receipts_____ | $ | 2,868 | 33 |
| To which should be added as a proper debit, 6 per cent. interest on $2,000 for one-half of 166⅔ months _____ | | 833 | 33 |
| | $ | 3,701 | 66 |

In other words, the borrower assumed, it says, a liability to pay $3,701.66 for $1,000 and its use for 166⅔ months, or about twenty per cent. for money. And against this liability is held up the hope that the business of the association will be immensely profitable, so that by reason of such profits the

ROWLAND *v.* BUILDING ASSOCIATION.

shares will arrive at their par value in a much shorter period than 166⅔ months. The foundation of such a hope is not easily discerned. Profits, if any come, must come from the pockets of the members alone. They must feed upon one another,—the borrowing members on the non-borrowing members, or *vice versa,*—for no other victims are in reach. Expenses must be met. Losses, inevitable in every business, will occur. And expenses and losses may not only destroy all hope of profits, but may bring the deluded borrower to the necessity of paying back for the benefit of creditors of the association the money he borrowed after he had settled the debt, as he thought, by the payment of his monthly dues through all the tedious years of his bondage to the association, for, however valid between the borrowing members or stockholders and the association may be their agreement that his debt shall be considered extinguished when he has paid in $100 per share, creditors of the association might rise up, and object to the consummation of this arrangement, upon the very plausible theory that the assets of a corporation should not be applied to the use of the stockholders until the creditors are paid in full. This would be a rude awakening from the pleasant dream that he had borrowed money at six per cent. and knew an easy way to pay it back. But it is an awakening that may come to all those who have entered into contracts such as that set out in this record, if the contention of the association is sustained.

We have examined the charter of this association to ascertain from what source it obtains capital to be thus invested. Section 7 provides that " paid up stock may be issued and sold at the price of fifty dollars per share," and that a dividend of $1.50 per share shall be paid semiannually on such stock, and that when such favored stock mature the holders shall be entitled to draw out $100 per share. Thus, it appears that what it takes from one stockholder, under the pretence that it is lending money at 6 per cent., it gives

to another with lavish hand. It is both a taker and a giver of usury.

It appears that the trustees named in the deed of trust have sold the property thereby conveyed to them, and out of the proceeds of that sale there has been repaid to the association all of the debt—principal and interest—due from Noell on account of money borrowed by him. In the settlement made the borrower got no credit for what dues he had paid on his stock. According to the rules which govern the making of such settlements, as prescribed by the decisions of this Court in *Mills* v. *Association*, 75 N. C., 292, and other cases, if credit had been allowed for those payments no complaint could be made by the borrowing stockholder or his assignee. *Overby* v. *Association*, 81 N. C., 56. Such a settlement would have justly and equitably adjusted the account between the association and the borrowing stockholder, and would have terminated his connection with it. But, when the association chose not to give such credit, it decided to maintain Noell's relation to it as a stockholder. Indeed, in its answer, which was filed after the sale of the mortgaged property, it expressly alleged that he " is a stockholder in the defendant association for twenty shares of stock," and "claims the right to enforce a fine of ten cents on each share of stock if monthly payments are not made when due." This allegation would seem to put an end to the controversy, if coupled with the fact that it is now conceded by all parties that out of the proceeds of the sale the debt for borrowed money was paid in full. If a "stockholder for twenty shares of stock," he must own that stock. If he owes the association nothing, it has no lien on the stock. If he owned it, as appears to be granted, he assigned it to the defendant Pittman, who here claims it, and is entitled to take it with its privileges and burdens.

But, apart from this allegation of the defendant that Noell is a stockholder, we think that a careful consideration

of all the various transactions between the parties will lead to the conclusion that the legal effect of the assignment of the stock heretofore set out was merely to place it in the hands of the association as additional collateral security for the loan that day made. to the stockholder. The sole consideration for that assignment was the loan. The only charge for that loan was interest at 6 per cent. It was clearly expressed. The association has received back its loan, and all the interest it charged. To give it the stock now would be to allow it to keep what it has paid nothing for, and what it has no warrant to claim as a gift.

It has been strenuously argued before us that the decisions of the Court of Appeals of the State of Virginia must be allowed to control us in our construction of the contract between this association and its borowing stockholder, and our determination of his rights thereunder. It was said by that Court, in the case of *White* v. *Association*, 22 Grat., 233, when considering an arrangement between the parties then before it, similar to that we are here considering, that " if the transactions and dealings of this association with its members are warranted by the statute, and that statute is warranted by the Constitution, though they may operate harshly and oppressively, it is not the province of the Court to relieve. The fault is in the law, which the Legislature alone can alter, or in the improvidence of the party, which neither the Court nor the Legislature can relieve." We feel no such constraint. We cannot allow such a bargain as this association says it made with the borrowing stockholder to be enforced in the Courts of this State. It is unconscionable. It violates the law of this Commonwealth, as construed by repeated decisions of this Court. The rights of the parties must be settled here, where the contract was made. It is in no true sense a Virginia contract. The labored efforts of the association to make it so appear but add to the conviction that it is not so in fact.

Where a party litigant in the Courts of this State asserts that his rights are to be adjudicated, not by the laws of this State, but by those of another; that a contract illegal here shall be enforced because it is legal under the laws of another forum, he must be able to show clearly and conclusively that his case is one that entitles him to make such a demand. In this case the borrower was in this State; he applied for the loan here; there was a local board of managers here; it had a treasurer; the money was paid to the borrower here; he secured its repayment by a mortgage on land situated here; and the mortgage was executed here. Calling it a Virginia contract does not make it one. Sending the application to the "home office," as it is called; remitting the money from Richmond; calling the local board and its treasurer the agents, not of the corporation, but of the members who live in that locality; providing in the bond that it shall be paid in Virginia—all these things cannot enable the foreign corporation to evade the usury laws of this State.

Under the laws of this State and the decisions of this Court, what a borrowing stockholder of a building and loan association pays into the treasury of the association on stock account is a fund to be applied to the extinguishment of his debt. He has drawn out money in bulk. He pays back by littles. *Mills* v. *Association, supra.*

The proper method of stating the account between the borrower, Noell, and the association would require that the former should have had credit for what he had paid in on his stock. Had this been done the stock would have been extinguished. It was not done. The stock, therefore, by the act of the corporation, still exists, and belongs, we think, to the assignee, Pittman. The judgment should be modified in conformity to this opinion.　　　Modified.