W. H. ROWLAND v. OLD DOMINION BUILDING & LOAN
ASSOCIATION et al.

*Building and Loan Association—Contract—Usury—Fore-
closure of Mortgage—Uniform Laws.*

1. A contract, by which the stock, taken out by a borrower and
   assigned to the association, when the mortgage is executed,
   is forfeited to the association on default, without allowance
   of credit on the mortgage for the payments made on the
   stock, is unconscionable, and, though upheld by the laws of
   the association's own state, will not be enforced in North
   Carolina.
2. When the foreclosure has realized enough to pay the sum bor-
   rowed, with interest at the rate stipulated on the face of the
   mortgage, and expenses, and the association has allowed
   nothing for payments made by the borrower on his stock,
   which he assigned to the association when he made the
   mortgage, such assignment is to be treated as merely a pledge
   of additional security for the loan and the borrower is enti-
   tled to a return of the stock.

3. Laws must be consistent with each other and uniform in their bearing upon all the people of the State, and inasmuch as the general law fixes the rate of interest at six per cent. per annum, no law of the General Assembly can be allowed to alter or change the general law in this respect. Hence, Chap. 444, Acts of 1895, amendatory of Ch. 7, Vol. 2, of *The Code*, has not the effect of allowing a charge by B. & L. Associations of a greater rate than six per cent. per annum on loans.

PETITION to rehear case reported in 115 N. C., p. 825.

MONTGOMERY, J.: The matter before the Court arises upon an application to rehear the case of *Rowland* v. *Association*, reported in 115 N. C., 825. We have given each and all of the grounds specified in the application a thorough and careful examination. Indeed, we have gone over the whole case, as it appears in the record, and as it was presented to the Court; and we have considered anew the opinion of the Court, in all its bearings. In addition, we have also thought over the effect and the meaning of the act of 1893 and that of 1895, amendatory of chapter 7, vol. 2, of *The Code* (Building & Loan Associations).

We were urged in the last argument, by counsel for the defendants, to regard these acts as interpreting the original one and as confirming the power of these corporations to charge, for money loaned by them, amounts under the names of "dues," "fines," "fees," in addition to the rate of interest allowed by law. If this be conceded to be the intention of the law-making power, it does not follow necessarily that this Court will, in construing these statutes, give effect to such intention. Laws must be consistent with each other and uniform in their bearing upon all the people of the State. The Courts cannot, and must not, in their interpretation of the law, violate this principle. "No man or set of men are entitled to exclusive or separate

emoluments or privileges from the community, but in consideration of public services." Const., Art. 1, Sec. 7. We have a general law fixing the rate of interest at 6 per cent. per annum, and no act of the general assembly can be allowed to alter or change the general law in this respect.

We reiterate what this Court said in the case of *Mills* v. *Association*, 75 N. C., 292: "We know of no device or cover by which these associations can take from those who borrow their money more than the legal rate of interest, without incurring the penalties of our usury laws. Calling the borrower 'a partner,' or substituting 'redeeming' for 'lending,' or 'premium' or 'bonus' for an amount which they profess to have advanced, and yet withhold; or 'dues' for 'interest,' or any like subterfuges, will not avail. We look at the substance." And, too, where the State undertakes to make such special grants to special interests, we must adopt the meaning most favorable to the grantor, "for," as Chief Justice PEARSON said in the case of *Railroad Co.* v. *Reid*, 64 N. C., at page 158, "it is known that in obtaining charters, although the sovereign is presumed to use the words, in point of fact the bills are drafted by individuals seeking to procure the grant, and that 'the promoters,' as they are styled in England, or the 'lobby members,' as they are styled on this side of the Atlantic, have the charters or acts of incorporation drafted to suit their own purposes; and a matter of this kind, instead of being, in its strict sense, a contract, is more like the act of an indulgent head of a family dispensing favors to its different members, and yielding to importunity."

If corporations combining the capital of individuals are allowed to charge more than the legal rate of interest, by imposing fines and penalties upon those who borrow from them, on their failure to meet their obligations, the general law regulating interest will be defeated, and our legitimate

ROWLAND *v.* LOAN ASSOCIATION.

banking institutions and private capitalists, who lend money on interest, will be greatly prejudiced in their rights, unless they resolve themselves into building and loan associations, and thus make a dead letter of our usury laws.

Counsel for the defendants called our attention to the magnitude of the business and the immense amount of capital of these associations, their aggregated capital doubling many times the combined capital of all the national banks of the country. This is a strong reason, to our minds, why the power of these corporations should be watched with a jealous eye. Justice READE, in delivering the opinion in Mills' case, *supra*, well said: "They are numerous and influential. They influence legislation. By their liberal advertising, they influence the press. And even the courts may be insensibly affected." The enormous profits which the defendant association derives in the conduct of its business, as set forth in their by-laws, and as demonstrated in the opinion in this case delivered by Justice BURWELL, make it clear that the laws should not grant them such favors as they claim from the State.

In conclusion we are satisfied that the unanimous decision of this Court, made and published in 115 N. C., 825, is sound in all respects, and is the law of the land.

Upon the application for the rehearing of this case, Mr. Justice BURWELL discovered that the Court had overlooked a credit of $130, a part of the money paid by defendant Noell, which the plaintiff had given to Noell. The following is the language of Judge BURWELL upon discovering the oversight: "In the statement of the account made by the referee occurs this item: 'By cash paid on loan, $130.' In the petition for a rehearing it is stated that this credit was placed on the account as the value of the stock and that we overlooked that fact. This is true. If, therefore,

the assignee, Pittman, is declared to be the owner of the stock, this credit should be stricken from the account; for, as we have held, the defendant association is entitled to have all that it loaned Noell with 6 per cent. interest thereon. Indeed, its counsel states that it asks no more. The proceeds of the sale of the mortgaged property are sufficient, it appears, for that; and therefore there is no necessity, in order to satisfy the association's claim, that payments on stock should be applied on the debt. Hence we may, without encroachment on the rights of the building and loan association, direct that it be paid in full out of the proceeds of sale, and thus leave the stock for him to whom Noell assigned it, the defendant Pittman. The property in Court consists of the proceeds of sale and the stock. Under the circumstances, it is but just and proper that the mortgaged loan (and we hold it to be) should be paid out of the first, the proceeds of the sale. This will produce an equitable result." The petition to rehear is therefore dismissed, and the former judgment modified in respect to the $130 credit.

AVERY, J., dissents.