POLLOCK v. B. & L. ASSOCIATION.

1. COURT OF COMMON PLEAS—JURISDICTION—FOREIGN CORPORA-TION—ATTACHMENT—SERVICE PROCESS.—The Court of Common Pleas can acquire jurisdiction of a foreign corporation without attachment of its property within the jurisdiction.

2. FINDING OF FACT—AGENT—B. & L. ASSN.—The finding of fact by the Circuit Judge that Kollock was a resident agent of the foreign B. & L. Assn. upon whom process could be served, sustained.

3. FOREIGN CORPORATION—SERVICE PROCESS—AGENT—REV. STAT., 1466.—The designation by a foreign corporation, under sec. 1466, Rev, Stat., of a particular person upon whom process may be served is not exclusive, but in addition to other modes of service.

4. RECEIVER—FOREIGN CORPORATION—SERVICE PROCESS—AGENT—JURISDICTION.—The appointment of a receiver by a foreign Court for a foreign corporation, which has a resident agent in this State, which has property here, and is doing business here, does not affect the service of process upon such agent in this State, and such service will give our Court jurisdiction of such foreign corporation.

5. PRESUMPTION—JURISDICTION—COMPLAINT.—In the absence of negative allegations in the complaint, the Court of Common Pleas will presume that a plaintiff, in a suit brought therein, is a resident of that jurisdiction.

6. COMPLAINT—CAUSES OF ACTION.—The allegations in the complaint sued on, *held* to be sufficient to set up one cause of action against the B. & L. Assn. for excessive collections, and another against the bank for being an active aider, and for acting in violation of the trust it assumed.

7. JOINDER OF CAUSES OF ACTION.—Two causes of action, one against one defendant for wrongfully collecting a sum of money, and the other against another defendant for wrongfully paying over the same fund, may be joined in the same action against both defendants.

Before GARY, J., Chesterfield, September, 1895, and WATTS, J., Chesterfield, February, 1896.    Both affirmed.

*Messrs. W. F. Stevenson* and *R. T. Gaston*, for appellants, cite: *Misjoinder:* 18 Ency., 496; Pomeroy's Estee, sec. 315; 9 S. C., 277; 13 S. C., 324; 22 S. E. R., 592; 24 S. C., 44; 27 S. C., 318; 16 S. C., 148; 26 S. C., 480. *Statement of cause of action:* 15 S. C., 29, 29 S. C., 589; Pomeroy's Estee, sec. 318; 16 S. C., 580; 18 S. C., 580. *Usury:* 28 S. W. R., 602; 15 At. Rep., 663; 43 S. C., 86; 21 S. E. R., 44; 15 S. C., 462; 21 S. E. R., 540; 22 S. E. R., 31; 21 S. E. R., 924; 75 N. C., 292; 12 Rich. Eq., 124. *Suit against foreign corporation:* Code, 423; 32 S. C., 319; 35 S. C., 380. *Jurisdiction:* 12 S. C., 558; 18 S. C., 224; 24 S. C., 122. *Cause of action arises when contract is to be performed:* 39 S. C., 490; 17 S. C., 410; 20 S. E. R., 984. *Service of foreign corporations:* 39 S. C., 496–498; 41 S. C., 22; 95 U. S., 714; 106 U. S., 350; 149 U. S., 194; 132 U. S., 534; 144 U. S., 445; 11 Sup. Ct. Rep., 38, 10; 15 Sup. Ct. Rep., 560. *Jurisdiction of for Corp.:* 95 U. S., 714; 4 Exch., 290; 12 Gray, 201; 9 Ex., 345. *Appointment of receiver takes away authority of agent:* 15 Sup. Ct. Rep., 560; Rev. Stat., 1472–3; Paley on Agency, 156; 2 Livermore on Agency, 306–8; 27 S. C., 316.

*Messrs. Edward McIver* and *Pollock & Pollock*, contra,

cite: *Service on for. corp.:* Code, 155; 33 S. C., 609; 22 Ency., 131; Rev. Stat., 1472, 1466; 22 S. E. R., 761. *Effect of appointment of receiver upon service:* 14 S. C., 573; Gluck & Beck on Rec., 35; 17 How., 338; 20 Ency., 65, 66, 278. *Usury:* 23 S. E. R., 450; 22 S. E. R., 8; 18 S. E. R., 965; 21 S. E. R., 537. *Misjoinder:* Code, 188; Pomeroy on Rem. and Remedial Rights, 479, and sec. 463; 18 S. C., 469.

Nov. 27, 1896. The opinion of the Court was delivered by

JUDGE. BUCHANAN, acting Associate Justice, instead of Chief Justice McIver, disqualified. This was an action begun on the 29th day of July, 1895, by the service in Cheraw, S. C., of the summons and complaint on A. G. Kollock, who, it is contended, was the resident agent of the Carolina Interstate Building and Loan Association of Wilmington, N. C., and by service on the same day on the Bank of Cheraw. The Bank of Cheraw demurred to the complaint, and the building and loan association, appearing only for that purpose, served a notice on the attorneys for the plaintiffs of a motion to set aside the service of the summons and complaint, and dismiss the proceedings as to it, on the ground that it had not been brought under the jurisdiction of the Court by proper service. At the September term (1895) of the Court of Common Pleas held for Chesterfield County, this motion was heard by his Honor, Judge Ernest Gary, and refused. Notice of intention to appeal was duly served, but it was agreed among counsel that pending this appeal the building and loan association might "make and argue any demurrers, oral or written, which it may be advised to make, at the February term for 1896 of this (Circuit) Court, without prejudice to any of its rights under said appeal." At the February term (1896), both the Bank of Cheraw and the building and loan association interposed and argued demurrers and motions to dismiss the complaint. The demurrer raised the question of the alleged misjoinder of two distinct causes of action, and the motions to dismiss the complaint were made on

the ground that it did not state facts sufficient to constitute a cause of action, in that the plaintiffs, as purchasers of land covered by mortgage, could not plead usury in the terms of the mortgage; and, further, by the Bank of Cheraw, that the complaint showed that no cause of action could arise against it until the cause of action against its codefendent was adjudicated. His Honor, Judge Watts, overruled the demurrers and motions to dismiss, holding that the plaintiffs could not plead usury, not being parties to the original contract, but that there were sufficient allegations in the complaint to show, if true, that the building and loan association had collected too much money from the plaintiffs, under the contract made by said association with Mrs. R. J. Pollock, the grantor of plaintiffs, when the contract was properly construed and the debt properly computed, and that the complaint charged that the Bank of Cheraw was a participant in such collection. Both defendants appealed. By consent of counsel, all the appeals growing out of this case were heard together.

The appeal from the order of his Honor, Judge Ernest Gary, is brought upon the following exceptions: I. Because the Court erred in holding that the Court had obtained jurisdiction of the Carolina Interstate Building and Loan Association by mere service on A. G. Kollock. II. Because the Court erred in holding that the agreement constituting A. G. Kollock agent to solicit stock, was a valid agreement made by said association, and constituted him such a resident agent as could be served. III. Because the Court erred in holding that said so-called agreement had not terminated when the association ceased to issue stock. IV. Because the Court erred in construing the by-laws of said association to mean that A. G. Kollock, as treasurer of the local branch association, was agent of the said defendant association, in the face of section 5, article 9, of said by-laws. V. Because the appointment of a receiver by the Court of North Carolina for said corporation, and the taking possession of the assets of said corporation by said receiver under

said order, terminated the right of A. G. Kollock to act as said agent of the corporation, even if he had been such agent, and the Court erred in not so holding. VI. Because the Court erred in holding that any agent of the said corporation (being a foreign corporation) could be served if he resided in the State, and the service would be legal. VII. Because the Court erred in holding that service could be made here on a foreign corporation, through any resident agent of the same, without the attachment of any property. VIII. Because the Court erred in holding that A. G. Kollock was the resident agent of the said corporation at the date of the service of the summons. IX. Because the Court erred in holding that the said defendant could be served here, although it had no property here in this State, and the cause of action did not arise in this State, without serving the agent specially appointed by said defendant to accept service. X. Because it does not appear that the Court has acquired jurisdiction of the defendant corporation, or that plaintiffs have a right to sue said corporation in this State, and the Court erred in not so holding. XI. It does not appear that the plaintiffs are residents of this State, or that the cause of action arose in this State, and the Court erred in not dismissing the action for want of jurisdiction. XII. Because the Court erred in holding that A. G. Kollock had been properly appointed local agent of said association, and that said appointment was signed by E. S. Tennant, secretary, and he had no authority to appoint any agent, as appears from article 7, sec. 1, of the articles of incorporation of said corporation.

The grounds of appeal from the order of Judge Watts, on behalf of the building and loan association, are as follows: I. Because the Circuit Judge erred in holding that the complaint in this action could be construed to be for money wrongfully collected, in violation of a contract of the Carolina Insterstate Building and Loan Association with R. J. Pollock, not collected as usurious interest, when plaintiffs expressly alleged that all the money claimed by them

to have been wrongfully collected was collected as usurious interest. II. Because the Court erred in holding that the complaint contained sufficient allegations as to this defendant to show, if true, that more money had been collected by the Carolina Interstate Building and Loan Association than was due on its contract, even if the plea of usury was not allowed. III. Because the Court erred in holding that plaintiffs, in their complaint, stated, or attempted to state, any other cause of action against this defendant than one to recover usurious interest paid and the penalty therefor, and in not dismissing the complaint, when he held that these plaintiffs could not plead or set up usury. IV. Because no cause of action was stated to this defendant, and the Court erred in not dismissing the complaint, on its motion, on that ground. V. Because the Court erred in not holding that that complaint showed on its face that the said building and loan association had accepted less than was actually due it under its contract, and in not dismissing the complaint on that ground. VI. Because the Court erred in holding that the two causes of action attempted to be stated in the complaint were properly joined. VII. Because the Court erred in holding that both of the alleged causes of action affected all the parties to the said action or all the defendants.

On behalf of the Bank of Cheraw, the following grounds of appeal from the order were taken: I. The Circuit Judge erred in holding that the alleged cause of action against its codefendant and that against this defendant were properly joined in complaint. II. He erred in not holding that it appeared from the face of the complaint that no cause of action arose against this defendant until the liability of its codefendant to the plaintiff had been first "determined and adjusted." III. He erred in holding that as the complaint charges the Bank of Cheraw with being a participant, "to a certain extent," in collection of the money received by its codefendant, it states a present cause of action against it. IV. He erred in holding that complaint stated a cause of

action against this defendant, when no legal obligation is alleged—no demand made or refusal on its part, and no allegation in complaint that this defendant was not ready and able to respond to any liability it had assumed whenever same accrued.    V.  Having eliminated the question of usury from the case, he erred in not holding that the complaint does not state any liability on the part of the Carolina Interstate Building and Loan Association to the plaintiffs, and consequently could allege no cause of action against this defendant.    VI.  He erred in refusing to sustain the demurrers of this defendant and in not dismissing the complaint.

The appeal from Judge Gary's order raises substantially two questions: 1st. Can the Court of Common Pleas acquire jurisdiction of a foreign corporation without attachment? 2d. Was the service upon the person of A. G. Kollock a valid service upon the Carolina Interstate Building and Loan Association?   We will discuss these questions in their order.   Can jurisdiction be obtained over a foreign corporation without attachment?   Section 155 of the Code provides for service against the corporation by delivering a copy of the summons "to the president or other heads of the corporation, secretary, cashier, treasurer, a director, or agent thereof."   The second paragraph thereof provides for service in respect to foreign corporations "only when" such corporation "has property within the State, or the cause of action arose therein, or where such service shall be made in this State personally upon the president, cashier, treasurer, attorney or secretary, or any resident agent thereof."   Let us analyze these alternative services: 1st. Such service can be made in respect to a foreign corporation when it has property within the State.   2d. Such service may be made in respect to a foreign corporation when the cause of action arose within the State.   3d. And such service *shall* be made in respect to foreign corporations where such service is made in this State personally upon the president, cashier, treasurer, attorney or secretary, or any resident agent thereof.   It is to be noted

that only in one of these modes of service does the matter of property figure as an essential. In that one, it rather gives the power to make such service, rather than specify the particular manner of effectuating the purpose. It merely declares that service may be made when such foreign corporation has property within the State. The manner of such service, by attachment and advertisement or otherwise, is not material. In the second division, the manner of service is also not mentioned. Remembering that at common law there was no personal service on a foreign corporation, the legislature clearly contemplated the manner of service that at the adoption of the Code was usual and appropriate in such cases (see sec. 156), unless personal service within the State could be made "upon the president, cashier, treasurer, attorney or secretary, or any resident agent thereof." Plainly, therefore, the manner of service was extended. It became no longer necessary (although permissible) to serve by publication and attachment of the president, cashier, treasurer, attorney or secretary, or any resident agent of the defendant foreign corporation could be served within the State; personal service upon such officers within the State was to be considered as personal service upon such corporation, to the same binding effect and force and efficacy as if the defendant had been a domestic corporation served within the State. This view is supported by the cases of *Hester* v. *Rosin Fertilizer Co.*, 33 S. C., 609; *Tillinghast* v. *Boston Co.*, 39 S. C., 84, and the recent case of *Littlejohn* v. *R. R. Co.* It is noted that the complaint here alleged that the defendant building and loan association was owning property and doing business in the State; there was no error here.

Was the service by delivering a copy of the summons upon A. G. Kollock at Cheraw on the 29th day of July, 1895, a valid service upon the Carolina Interstate Building and Loan Association? Was the said A. G. Kollock a resident agent of the said corporation? If the said Kollock was not a resident agent of the said corporation, therefore, did

the appointment of a receiver of such building and loan association by the Courts of North Carolina terminate such agency? The complaint alleges "that the Carolina Interstate Building and Loan Association is now and was at the time hereinafter mentioned a corporation duly chartered under and by the laws of the State of North Carolina, and owning property and doing business in the State of South Carolina, county of Chesterfield, and that A. G. Kollock, of Cheraw, is the duly constituted and appointed resident agent thereof, as plaintiffs are informed and believe." The Code of Procedure, sec. 155, provides that "the summons shall be served by delivering a copy thereof, as follows: * * * Such service can be made in respect to a foreign corporation only when it has property within the State, or the cause of action arose therein, or where such service shall be made in this State personally upon the president, cashier, treasurer, attorney, or secretary, or any resident agent thereof." The trial court found as a matter of fact that A. G. Kollock was a resident agent of the defendant association, and his finding on this question cannot be reversed by this Court. *Hester* v. *Rosin Fer. Co.*, 33 S. C., 609. The Code does not draw any distinction between the different classes of agents; it contemplates "any resident agent," as an appropriate one to be served. In this case Kollock was a soliciting agent, a director in the local board in Cheraw, receipted for and remitted all instalments, fines, dues, and was paid a regular commission. He had a standing yearly advertisement in the Cheraw Reporter, over his signature as agent, and the association paid him each year for the same. The very negotiations for the loan out of which this case arose were had with Kollock. Having held Kollock out as its resident agent with full powers, it would be monstrous to now permit it to set up the plea that if he was an agent at all, it was an agency of limited powers, and did not extend to the transaction out of which this case arose. Courts will not give its sanction to a doctrine that a corporation in such

a manner can deny the power of an agency when an advantage is to be obtained by such denial, and share in the fruits of a contract when it is to its interest to consider such contract binding. "Generally service on an agent may be sufficient if the person was the agent conducting the transaction out of which the suit arose." Again, "generally service may be made on a local agent of a foreign insurance company whose business it is to issue policies, collect premiums, pay losses, &c." See 22 Am. & Eng. Enc. Law, 130–131. Certainly the Circuit Judge was amply justified by the evidence. It is only necessary to say here, in passing, that the designation of a particular person, as required by Rev. Stat., sec. 1466, upon whom service may be made, and service upon the same is not exclusive of, but in addition to, the other modes of service. *Littlejohn* v. *R. R.*

Did the appointment of a temporary receiver of the defendant association by the North Carolina State Court, a few days before the service in this State, render such service invalid? Such a receiver has (says the U. S. Supreme Court, in *Borth* v. *Clark*, 17 How., 338,) "no extra territorial power of official action, none which the Court appointing him can confer, with authority to enable him to go into a foreign jurisdiction to take possession of the debtor's property; none which can give him, upon the principles of comity, a privilege to sue in a foreign court or any other jurisdiction." "Receivers appointed by one jurisdiction are not entitled as of right to recognition in other jurisdictions, and courts of equity cannot acquire extra territorial jurisdiction over property by appointing receivers." 20 Am. & Eng. Enc. Law, 65–66. "The power of a receiver only extends to the boundaries of the territorial jurisdiction of the court appointing him." Gluck & Becker on Receivers, p. 3. In *Dial* v. *Gary*, 14 S. C., 573, our Court held, that an administrator appointed by the Courts of Massachusetts had no legal capacity to sue in this State, and that his assignment of the bond and

mortgage to a citizen of this State did not give the latter capacity to sue. (See *Patterson* v. *Pegues*, 18 S. C., 564.) This is supported by reason, and the jurisdiction and the power exercised by courts. A court deriving its power from the laws of North Carolina cannot confer any greater power than it is given. Having the right to appoint a receiver in their territory alone, such appointee is a creature of the appointing power, and cannot have greater power than his creator. The stream cannot rise higher than its source. "A corporation is not dissolved, *ipso facto*, by the appointment of a receiver." 20 Enc., 278. If this doctrine applies to the appointment of a permanent receiver, with how much greater force does it apply to the appointment of a temporary receiver?

The exceptions (X. and XI.) allege that inasmuch as the complaint does not show that the plaintiffs are residents of this State, the Court did not acquire jurisdiction of the cause. As preliminary to the consideration of this ground, it should be remembered that the Court of Common Pleas is a court of record, of general jurisdiction, of full and ample powers, and in no sense a court of inferior or limited powers. Certain presumptions attend the record and proceedings of the former, while to give jurisdiction to the latter, their jurisdictional facts must affirmatively appear. The record does not show that the plaintiffs are not residents of this State, nor does any matter appear negativing the presumption in the premises. Plaintiffs have a right to exhibit action, without amending the complaint exhibited by them, that they are residents within the State. *Chafee* v. *Postal Telegraph Co.*, 35 S. C., 372. To sustain a demurrer upon such grounds, the proof of want of jurisdiction must appear on the face of the complaint. Here the complaint certainly does not show that the plaintiffs are not residents of the State. See *Drake & Son* v. *Steadman*, 46 S. C., 490–491. We think that Kollock was a resident agent of the defendant association, and that such corporation was properly served, and that such

service was binding upon it.   Judge Gary's order is sustained.

Second appeal.   The exceptions of the building and loan association to Judge Watts' order, seven in number, and the exceptions of the Bank of Cheraw, six in number, raise three questions, and, for convenience, will be considered under as many headings.

*First.* Admitting that the plaintiffs cannot recover on the ground of usury alone, does the complaint state facts sufficient to constitute a cause of action against either or both of the defendants?   Let us examine the allegations of the complaint.   Upon this inquiry all the allegations are admitted to be true.   Has any fact been omitted, the insertion of which was necessary to constitute a cause of action?   It appears that on the 5th day of February, 1892, Mrs. R. J. Pollock, the assignor of the plaintiffs, became a stockholder in the defendant association, having subscribed for fifteen shares of its investment stock, and from that time to the 10th day of September, 1892, paid into the association the sum of $88.50.   On the 5th day of October, 1892, she borrowed from the association on the assignment of her shares, and her bonds secured by a mortgage on her house and lots in Cheraw, the sum of $1,500.   The condition of her bond was that she should pay to the association the sum of $25 per month, until the said shares of stock should have matured to their par value of $100 each; "provided. that if she failed to pay said monthly instalments for ninety days from the time same become due, then the whole of said borrowed sum of $1,500 should become due, with interest, at the rate of six per cent. per annum."   On the 8th day of February, 1893, she conveyed the property mortgaged to plaintiffs, who assumed her contract; plaintiffs insured the property for $2,500.   From the 5th day of October, 1892, to the 15th day of June, 1892, plaintiffs and their assignor paid to the association on the bond and mortgage $535.50.   On the 10th day of October, 1894, the house was burned.   The agent of the insurance company

thereafter soon called on plaintiffs' attorney in fact, with a check in favor of plaintiffs for $2,500; the plaintiffs' attorney in fact and the insurance agent went to the Bank of Cheraw, and by the binding agreement of all parties the check was, upon the surrender of the insurance policy by the bank, endorsed by the plaintiffs' attorney in fact, and deposited in the Bank of Cheraw; with the distinct understanding and agreement on the part of the bank to hold enough of the same to pay the balance due to the association when the amount due was determined, and to pay the balance to the plaintiffs. The association immediately demanded of the bank the sum of $1,293.43 in satisfaction of its bond and mortgage, although that was largely in excess of the amount due, and that the bank, without plaintiffs' knowledge, without waiting to ascertain the amount due, and in plain violation of its agreement to hold the same until it could be definitely ascertained what amount was due, paid the defendant association on the 14th day of January, 1895, the sum of $1,293.43, and delivered the bond and mortgage up to plaintiffs. The association has collected on the bond and mortgage the sum of $1,917.43, not including interest on payments made, and the same is largely in excess of the amount due on the bond. The money was borrowed on the 5th day of October, 1892, and the last payment was made on the 15th day of June, 1894.

The plaintiffs stand here in the place of Mrs. Pollock, and they must comply with her contract. While they cannot plead usury against it, having alleged that the amount collected was largely in excess of the amount due, are the allegations and general scope of the complaint broad enough for them to obtain other relief? Under this complaint can they demand a proper construction, and by such construction, if favorable, cannot judgment be entered up for the amount claimed to be due? Presumably the complaint was drawn principally to recover usury paid. Notwithstanding this fact, however, if under this complaint

any cause of action is stated, the Court below will be sus-
tained.    Surely it cannot be successfully contended that the
plaintiffs would have no remedy if the association had ob-
tained possession of $5,000, $10,000, or any amount in
excess of amount due, and applied it to the satisfaction of
the bond and mortgage.    No monthly payments were made
by the plaintiffs after the 15th day of June, 1894.    Pay-
ments then stopped.    Who could take advantage of the
forfeiture on failure to make these payments for ninety
days?    Did the association have this right?    If so, why did
they allow six months to pass?    If they had the right to in-
sist on such forfeiture, was it not to be exercised within a
reasonable time?    Had they not the right to waive this
condition?    If so, did they waive it?.    Did this provision
mean that the whole sum borrowed should be returned
without giving credit for the payments already made?    Sup-
pose the plaintiffs had made all the payments required
except the last, could it be contended that the whole amount
borrowed would become due without giving credit for the
payment made?    Would any Court enforce so unconscion-
able a contract?    The Court of North Carolina (*Rowland*
v. *Old Dominion B. & L. Ass.*, 22 S. E. Rep., 8, and 18 S.
E. Rep., 965,) and of South Carolina (*Buist* v. *Bryan*, 44
S. C., 121,) have spoken in no uncertain terms, and have
denied that upon such default the association may consider
the whole amount forfeited in face of the fact that pay-
ments have been made.    Now, with this in view, is it not
possible, is it not probable, that plaintiffs may have paid
$2,300 for the $1,500 borrowed, which is probably about
the amount that would be due, at seven per cent. interest,
ninety days before the time the association estimated that
the bond would be paid, when defaulted, and the whole
amount of $1,500, with interest, would become due.    The
prayer of the complaint is no part of the cause of action,
nor, indeed, is it considered a part of the complaint in setting
out the supposed relief to which the plaintiff deems him-
self entitled.    The bank undertook the confidence or trust

of holding the money as specially agreed.    Now, in plain violation of the assured trust, and to the alleged damage of the plaintiffs, the money was paid over.    Can it be successfully contended (if these facts be true) that a cause of action is not made out?    We are not prepared to say the Circuit Judge was in error in holding that the allegations of the complaint were sufficient to set up a cause of action against the association for excessive collections, and against the bank for being an active aider, and in violation of the trust it assumed.

*Second.*  Was there a misjoinder of two separate and distinct causes of action?    Section 188 of the Code declares that: "The plaintiffs may unite in the same complaint several causes of action, whether they be such as have been heretofore denominated legal or equitable, or both, where they all arise out of (1) the same transaction or transactions in connection with the same subject of action, &c. * * *    But these causes of action must all belong to one of these classes, and * * * must affect all the parties to the action, and not require different places of trial, and must be separately stated."    Now, did the cause of action against the defendant association and the cause of action against the Bank of Cheraw arise out of "the same transaction" or "transactions connected with the same subject of action?"    We find that the text writers, upon the construction of this seemingly simple provision, have not laid down any inflexible rule to determine its meaning and application.    There is no comprehensive rule, it would seem, by which cases that may arise under this section may be decided.    Mr. Pomeroy, in his work on Remedies and Remedial Rights, p. 479, says: "The most incongruous and dissimilar causes of action may be joined if they arise out of the same transaction or transactions connected with the same subject of action."    Actions arising on contract may be joined with actions arising out of tort.    Pomeroy's Rights, &c., sec. 463.    It would seem that while the causes of action must affect all the parties to a suit, it is not neces-

sary that they should affect all of them equally or in the same manner.   It seems to us that the "transaction" out of which both causes of action arose in this case was the alleged wrongful payment by the bank to the association of the funds (or part of them) left there on deposit.   The association wrongfully collected from the plaintiffs more than was due on the bond, and the bank participated in and aided such collection by paying to the association the money of the plaintiffs so deposited.   The first cause of action is the wrongful collection of the money by the association from the bank; the second cause of action is the wrongful paying of the money by the bank to the association, both arising out of the same transaction, *i. e.*, the payment and receipt of the $1,293.43.   We think there was no error in the order appealed from on this ground.

*Third.* It is claimed that there could be no cause of action against the Bank of Cheraw until the accounts between the plaintiffs and the defendant association are adjusted.   Without again repeating the facts out of which this case arose, it is sufficient to say, that such contention would probably be true, if the Bank of Cheraw had not adjusted and determined for itself the amount due, and in violation of the agreement paid the money over to the association.

The judgment of the Circuit Court is affirmed.