GEORGE v. OSCAR SMITH & SONS CO. et al.

In re CRAWFORD.

(Circuit Court of Appeals, Fifth Circuit.   March 18, 1918.)

No. 3056.

1. MORTGAGES ⬤⇒2—WHAT LAW GOVERNS—DELIVERY.
   Where notes and a deed of trust to secure them were executed in the state of the borrower's residence, and forwarded with draft attached for the amount of the loan to the residence of the lender, where they were delivered on payment of the draft, the deed of trust and the notes did not become effective until delivery, so that the contract was consummated in the state of the lender's residence.

2. USURY ⬤⇒2(3)—CONTRACTS—WHAT LAW GOVERNS.
   Where, until delivery in Pennsylvania, a deed of trust on Mississippi land and notes executed in that state did not become effective, the Pennsylvania usury statutes instead of Acts Miss. 1912, c. 229, control the validity of the transaction; for the contract, though to be performed in Mississippi, was a Pennsylvania contract, over which the Mississippi statutes had no control.

3. CORPORATIONS ⬤⇒657(3)—FOREIGN CORPORATIONS—CONTRACTS—VALIDITY.
   That foreign corporation had previously violated laws of Mississippi by doing business in that state without authority does not render unenforceable contract made by such corporation in a foreign state, though it was to be performed in Mississippi.

4. CORPORATIONS ⬤⇒642(4)—FOREIGN CORPORATIONS—DOING BUSINESS IN STATE.
   Where a Pennsylvania corporation in that state made a loan secured by a deed of trust on Mississippi land, the deed of trust, though executed in Mississippi, being delivered in Pennsylvania on the corporation's payment of a draft attached thereto, such corporation was not doing business in Mississippi, so its failure to comply with the Mississippi statutes prescribing conditions upon which foreign corporations might do business in the state would not preclude enforcement of the deed of trust.

   Batts, Circuit Judge, dissenting.

Petition to Superintend and Revise and Appeal from the District Court of the United States for the Southern District of Mississippi; Henry C. Niles, Judge.

In the matter of the bankruptcy of V. L. Crawford. From a decree which permitted the Oscar Smith & Sons Company and others to foreclose a deed of trust given by the bankrupt, A. L. George, trustee, appeals, and likewise petitions to superintend and revise. Affirmed.

Henry P. Dart and William Kernan Dart, both of New Orleans, La. (Benjamin W. Kernan and Henry P. Dart, Jr., both of New Orleans, La., on the brief), for appellant.

Robert H. Thompson, of Jackson, Miss., and Albert S. Bozeman, of Meridian, Miss. (J. Harvey Thompson, of Jackson, Miss., on the brief), for appellees.

Before WALKER and BATTS, Circuit Judges, and EVANS, District Judge.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WALKER, Circuit Judge. By appeal, and also by petition ,to superintend and revise, A. L. George, trustee of V. L. Crawford, a bankrupt, presents for review a decree an effect of which was to permit the foreclosure of a deed of trust given by the bankrupt to secure the payment to Oscar Smith & Sons Company, a corporation, of $25,000 and interest, evidenced by nine notes made by the bankrupt. The principal ground upon which the right to enforce the deed of trust was denied was that the contract was infected with usury; and it was contended that it is governed by the law of Mississippi, and that the rate of interest contracted for was such as, under the law of that state (Acts of Mississippi 1912, p. 301), results in the forfeiture of the principal and all interest. The opposing contentions were that there was no usury in the contract, and that it was a Pennsylvania contract, and, if it was usurious, the result was, not to invalidate the contract, but to render uncollectable only so much of the interest reserved as was in excess of the legal rate.

The correspondence which passed between the lender and the borrower before the deed of trust and the notes it secured were executed we think clearly shows that the lender was to be paid, as compensation for the loan of the money, an amount in addition to the 6 per cent. per annum interest which the secured notes by their terms called for, and that this amount was such as to make the compensation for the use of the money for the period the loan was to run more than 8, but less than 20, per cent. per annum.

[1, 2] The deed of trust was signed and acknowledged in Mississippi, the property it covered was located in Mississippi, and the notes it secured were made payable at the First National Bank of Meridian, Miss. A representative of the lender, the principal place of business of which was Philadelphia, Pa., went to Mississippi, investigated the security proposed to be given for a loan of $25,000, which was to include an unsecured amount already advanced, reported favorably to his principal; and thereupon the deed of trust and the notes it secured were prepared and forwarded to Philadelphia, accompanied by Crawford's draft on Oscar Smith & Sons Company for the balance of the $25,000 to be lent, and the papers were delivered to the drawee in Philadelphia upon its payment of the draft. The deed of trust and the notes it was to secure were not effective until they were delivered in Philadelphia. Delivery was required to make the contract they evidence. Tilden v. Blair, 21 Wall. 241, 22 L. Ed. 632; Buchanan v. Drovers' National Bank, 55 Fed. 223, 5 C. C. A. 83. The contract was made in Pennsylvania and performance of it was to be in Mississippi. It was usurious under the laws of both states. In such case the legal consequences of the violation of the law by the making of the contract for a usurious consideration are determined by the law of the place where the contract is made. Andrews v. Pond, 13 Pet. 65, 78, 10 L. Ed. 61; Heath v. Griswold (C. C.) 5 Fed. 573; Minor on Conflict of Laws, p. 433; 39 Cyc. 904, 908. Andrews v. Pond, supra, presented the case of a contract which was usurious under the law of New York, the state in which it was made, and under the law of Alabama, the state in which it was to be performed. The following

is the court's statement of the ground relied on to support the conclusion reached that the legal consequence of the usury was determined by the law of the place where the contract was made:

"The defendants allege that the contract was not made with reference to the laws of either state, and was not intended to conform to either; that a rate of interest forbidden by the laws of New York, where the contract was made, was reserved on the debt actually due; and that it was concealed under the name of exchange, in order to evade the law. Now, if this defense is true, and shall be so found by the jury, the question is not which law is to govern in executing the contract, but which is to decide the fate of a security taken upon an usurious agreement, which neither will execute? Unquestionably, it must be the law of the state where the agreement was made and the instrument taken to secure its performance. A contract of this kind cannot stand on the same principles with a bona fide agreement made in one place to be executed in another. In the last-mentioned cases the agreements are permitted by the lex loci contractus, and will even be enforced there if the party is found within its jurisdiction. But the same rule cannot be applied to contracts forbidden by its laws and designed to evade them. In such cases the legal consequences of such an agreement must be decided by the law of the place where the contract was made. If void there it is void everywhere, and the cases referred to in Story's Conflict of Laws, 203, fully establish this doctrine." 13 Pet. 77, 78, 10 L. Ed. 61.

The result of applying the rule stated to the facts of that case was the conclusion that the contract under consideration was void because under the law of New York that was the legal consequence of the usury. But nothing in the court's statement of the rule governing a contract forbidden by the law of the place where it was made and also by the law of the place where it was to be performed indicates that the rule stated is applicable only where the contract is a void one under the law of the place where it was made. We understand the court's ruling to be that the legal consequences of such a forbidden contract must be decided by the law of the place where the contract was made, whether that law makes the contract void or attaches a less penalty to the commission of usury. A contract reserving interest at the rate of more than 20 per cent. per annum is a forbidden one in Pennsylvania as well as it is in Mississippi, though the penalty in the former state is the loss of the right to collect any interest, while in the latter state the principal and all interest are forfeited. We have not had access to the statutes of Pennsylvania relating to interest and usury, and have relied on summaries of such laws found in publications which are supposed to be accurate in reference to such a matter. As above stated, we understand the consequence of making a usurious contract in that state is to render so much of the interest to be received uncollectable as is in excess of the legal rate of 6 per cent. per annum. Under that law the deed of trust in question is not unenforceable.

The following is the Mississippi statute which it is contended should govern in determining the consequences of the usury:

"The legal rate of interest on all notes, accounts, and contracts shall be six per cent. per annum; but contracts may be made, in writing, for a payment of a rate of interest as great as eight per centum per annum. And if a greater rate of interest than eight per centum shall be stipulated for or received in any case, all interest shall be forfeited, and may be recovered back, whether the contract be executed or executory. If a rate of in-

terest is contracted for or received, directly or indirectly, greater than twenty per cent. per annum, the principal and all interest shall be forfeited, and any amount paid on such contract may be recovered by suit." Acts of Mississippi 1912, p. 301.

The forfeiture provisions of this statute are penal in their nature. The penal laws of Mississippi are not effective on transactions happening beyond the borders of the state. The statute does not purport to operate extraterritorially or to make a usurious contract entered into in another state subject to the penalties it denounces. A forbidden transaction occurring in Pennsylvania and having penal consequences there does not subject a party to it to a penalty denounced by a Mississippi statute which does not purport to have such an effect. The transaction in question was such as to subject the lender to a penalty imposed by the law of Pennsylvania, the state in which the lending took place. It is that penalty which the lender incurred. If more than 20 per centum per annum interest had been reserved, and payments on the contract had been made to the lender in Pennsylvania, it hardly would be contended that the making of such payments gave rise to the right of action in the borrower which the Mississippi statute would have made a consequence of the transaction if it had happened in the latter state. We are not of opinion that the Mississippi statute operated extraterritorially in the one way more than the other. It happens in the instant case that the deed of trust in question is enforceable for the principal of the debt secured whether it is the Pennsylvania law or the Mississippi law that governs in determining the consequences of the usury.

[3, 4] Another suggestion is that the deed of trust is unenforceable by the nonresident corporation to which it was made because of that corporation's failure to comply with the requirements of the Mississippi statute prescribing the conditions on which such a corporation may do business in that state. Though that corporation, prior to the execution of the deed of trust in question, did or transacted business in Mississippi in violation of the law of that state, that law does not purport to give to that conduct the effect of invalidating a contract subsequently made by the corporation in another state. The making of the contract in Pennsylvania did not constitute the doing of business in Mississippi. In this connection, the decision in the case of Chattanooga Building, etc., Association v. Denson, 189 U. S. 408, 23 Sup. Ct. 630, 47 L. Ed. 870, is called to our attention. In that case it was held that a delivery in Alabama to a Tennessee corporation's agent there of a note and mortgage to the corporation, which were payable in Tennessee, constituted the doing of business by the corporation in Alabama. That decision by no means supports the contention that the making of the contract here in question by the delivery in Pennsylvania of the deed of trust and the notes it secured constituted a doing of business in Mississippi.

The conclusion is that the decree under review was not erroneous in denying an injunction restraining the foreclosure of the deed of trust mentioned.

The decree is affirmed.

BATTS, Circuit Judge (dissenting). The Smith Company (Oscar Smith & Sons Company, appellee), a New York corporation, loaned to Crawford (V. L. Crawford, using the name of Crawford Bleachery), of Meridian, Miss., $25,000, to secure which Crawford executed a deed of trust, naming Broach trustee. The notes evidencing the debt not having been paid, Broach advertised for sale the property conveyed by the deed of trust. Unsecured creditors instituted a proceeding to have Crawford adjudged a bankrupt, and A. L. George was appointed receiver. George instituted proceedings before the referee in bankruptcy against the Smith Company and Broach, and obtained an order restraining the sale. The petition set up: (1) That at the time of the execution of the deed of trust Crawford was insolvent, and that the Smith Company had knowledge of his insolvency, and that the deed of trust was fraudulent, and gave the Smith Company an illegal preference; (2) that the trustee was about to embrace property in the sale not included in the deed of trust. The Smith Company answered, and the receiver, amending, further charged that the debt due the Smith Company was usurious, and that the Smith Company was a nonresident corporation, doing business in Mississippi, without having filed a copy of its charter, as required by law, and that the debt was contracted in the course of the company's business carried on and done in that state.

The referee heard evidence and denied the motion to set aside the restraining order. This action was reviewed and reversed by the United States District Judge, his decree finding that the deed of trust was not given to defraud creditors; that the trustee was not undertaking to sell property not covered by the deed of trust; that the notes secured by the deed of trust were not usurious; and that the Smith Company was not carrying on a business in Mississippi within the meaning of the Mississippi law. This judgment is before us for review.

The finding that the deed of trust was not executed for the purpose of defrauding creditors is sustained by the evidence.

The questions remaining for determination are: (1) Is the transaction one affected by section 935 of the Mississippi Code of 1906? (2) Was the contract subject to the laws of the state of Pennsylvania or to those of the state of Mississippi? (3) If subject to the laws of the state of Mississippi, was the contract usurious? and, if usurious, to what extent? and is the interest alone to be forfeited, or is the entire contract void? (4) If the contract is a Mississippi contract and usurious, are the federal courts to give effect to the consequences indicated by the statutes of Mississippi?

*Section 935, Mississippi Code 1906.*

The validity of the notes and mortgage is attacked upon the ground that the Smith Company was carrying on a business in Mississippi without complying with section 935 of the Mississippi Code of 1906. This section requires every foreign corporation doing business in Mississippi to file a copy of its charter, and it is provided that any foreign corporation "which shall not file a copy of its charter, as provided in

this chapter, shall be liable to a fine of not less than $100." The question arises as to whether or not the Smith Company was "doing business" in the sense in which these words were used in the statutes of Mississippi. The Smith Company conducted its business from an office in Philadelphia. The transactions in Mississippi arose out of contracts made by the concern for the sale of linters to be used in Delaware and elsewhere. The purchases by it to fulfill its contracts were primarily from Crawford. The necessity for securing the required linters, which could not be satisfactorily met by Crawford, resulted in purchases from other sources in Mississippi and adjoining states, and the concentration at Meridian in warehouses for bleaching at the mill of Crawford. The loan to Crawford arose out of these transactions. The transactions were scarcely of a kind in contemplation by the Legislature in the enactment of the cited laws.

If they were of a kind intended to be covered by the legislation, the intention could not be effective on account of the interstate character of the business. International, etc., Co. v. Pigg, 217 U. S. 91, 30 Sup. Ct. 481, 54 L. Ed. 678, 27 L. R. A. (N. S.) 493, 18 Ann. Cas. 1103.

The statute of Mississippi requires the filing of the charter of foreign corporations, and provides for a small fine for a failure to file the charter. The law does not declare that a contract entered into by a corporation which has failed to file its charter shall be void or otherwise affected. It undertakes to impose a duty upon a foreign corporation doing business within the state, and indicates the consequences to flow from a failure to perform. It is not an additional consequence of such a failure that the corporation shall lose all of the money which it may loan or otherwise use in the conduct of business within the state.

Appellants rely upon the case of Denson v. Chattanooga Natl. Bldg. & Loan Ass'n, 107 Fed. 777, 46 C. C. A. 634, decided by this court. The language of the Constitution of Alabama and statutes of that state is very much stronger than that of the statute of Mississippi. The law of Alabama renders it unlawful for any corporation to transact any business in the state before naming an agent, and renders it unlawful for any person to act as agent without compliance with its terms. In the case cited the Building & Loan Association whose contract was under attack was clearly doing business within the state, and doing business without having complied with the laws of the state.

Even if the Smith Company were doing business in the state of Mississippi under conditions requiring the filing of its charter and the doing of other things indicated by its statutes, the transaction between it and Crawford would not come under the terms of the law, and would not be affected by the failure of the company to do those things which are prerequisite to legally doing business within the state. When a foreign corporation is doing business within a state, and subjects itself, so far as such business is concerned, to the laws of the state, or is doing business within the state, and as to such business fails to comply with the law, neither circumstance will affect its rights with reference to interstate business. The recital of facts heretofore made, and which will hereafter be more fully developed, indicates the strictly interstate character of the transaction between the Smith Com-

pany and Crawford, in so far as the loan of money was concerned. It must be held that the law of the state of Mississippi did not intend to affect such transactions, and it must be further held that, if it did so intend, the intention would not be effective.

*What Law to Govern.*

In considering whether the validity and effect of the contract is to be determined by the law of the state of Mississippi or by the law of the state of Pennsylvania, an effort will be made to state the principles necessary to be considered in cases of this character.

When persons within the territory of a state or country undertake to mutually bind themselves, the general rule is that their legal relations are to be determined by the law of that jurisdiction. A contract is ordinarily entered into, and the consideration upon which it is based passes, where it is to be performed. A contract, however, may be made in one state or country, be based upon a consideration passed in another, and be performable in a third; or either of these elements may concur in situs with another, and the third have a different situs. Sometimes there will be other elements, referable to still other places. When there is an absence of unity in the places to which the several elements which enter into a contract or into its performance are referable, and there is a difference in the laws which govern the places to which the several elements are referable, determination of the validity of the contract presents difficulties in the solution of which the commentaries and decisions give little help.

Probably the nearest approach to a general proposition that may safely be made is this: The validity of a contract will be determined by the law with reference to which it is made. The accuracy of this proposition is to be determined by the statement hereinafter to be made as to its meaning. Moreover, the proposition itself is too general in its character to be of any particular value in the practical application of the law. Perhaps this further proposition will be helpful: The law with reference to which a contract is made is the law of that country in which the more important elements entering into the contract and its performance concur as to situs. The present inquiry is concerned alone with contracts charged to be usurious, and has special reference to such contracts of this character as are represented by promises to pay, based upon a consideration already received.

As to contracts of this character, a determination of the law with reference to which they are made may, and in this case will, require consideration of the following elements: (1) The law of the place where the contract is made, under which will be discussed (a) the law generally; (b) the residence and citizenship of the parties, and where they were when the contract was made; (c) the place and manner of the negotiations and of the final consummation of the contract. (2) The consideration and the place where it passed or was to become effective. (3) The law of the place where the contract is to be performed. (4) The law of the place where the land mortgaged to secure the debt is situate. (5) The law of the place where the money borrowed is to be used. (6) The intention of the parties as to the applicable law. (7) The law of the forum.

*Lex Celebrationis*

In the absence of an element with a different situs, the law of the place where the contract was entered into will determine its validity. The proposition is usually more broadly stated. It is sometimes said that if the agreement is a valid contract where made it is valid everywhere, and that if void where made it is void everywhere. These propositions are true only upon the assumption that the law of the place adopts as a part of itself, with reference to an agreement some elements of which are not directly referable to the place of the making, the law of the place of performance, the law of the place where the consideration passed, and the law of the place of other elements entering into the contract. It is certainly well recognized by the authorities that a contract may, within the jurisdiction within which it is made, be held valid by reason of the fact that it is to be performed elsewhere, when it would not be held valid if to be performed within the state in which it is made. It is also the case that the law of a state may hold a contract made within that state void on account of the character of the consideration, as measured by the law of another state, when, if the consideration had been referable to the law of the state in which the contract was made, it would have been sustained as legal.

With reference to the law of usury, it may be said to be fairly well settled that if the contract has no elements other than the place of the making, of the consideration, and of the performance, the place of the first and second being the same, and the place of the third different, the contract would be sustained, if the interest rate is legal within either state. In the important case of Andrews v. Pond, 13 Pet. 65, 10 L. Ed. 61, where the contract was held void, this principle is recognized. A careful study of the many cases in which questions of the same general character as those under consideration have been discussed leads to the conclusion that the place of the making of the contract is an important element; but that the law of the place of making is, in no sense, conclusive of the legality or invalidity of the contract.

That both parties are within the jurisdiction when the contract is made presents another element that is not unimportant. When one of them is within the state and another is in another, an element not less important appears. Especially is the fact of importance if the parties are citizens of the states in which they may respectively be at the time the contract is made. Residence and citizenship of the payor, for instance, when coupled with other elements, as the place of land mortgaged to secure the debt, and the place where the money is to be used, may be of controlling force.

The place where the negotiations are carried on may be of more importance than the place where the agreement already reached has its consummation in formal execution and delivery of instruments. The place of the negotiations, coupled with other circumstances, may give rise to the presumption that the law of that place is the law with reference to which the contract is made, and the law by which its legality is to be determined.

Negotiations are frequently conducted by mail, the parties being in and residing in different states. In such cases it may not only be difficult to determine where the contract was made, but it may be still more difficult to determine the extent to which the law of the place of the making should have an effect, when a conclusion is reached as to the place of making. Not infrequently the correspondence may suggest other elements of more importance than the mere place of making, as the situs of the securities offered, or a statement of the purpose for which the money is to be used, or a reference to the law which it would be necessary to consider.

The instruments evidencing the contract may be prepared in one state and sent to another for execution, or prepared and signed in one state and delivered through the bank or through the mails in another. There are some generalizations in the law as announced by the cases, to the effect that a contract will be held to have been executed—that is, entered into—at the place where the last step necessary to its making was taken. 39 Cyc. 902; Tilden v. Blair, 21 Wall. 241, 22 L. Ed. 632. There are also propositions to the effect that delivery may be accomplished by placing the signed instrument in the mail, and that the contract is regarded as made when it first takes effect so as to bind both parties. 39 Cyc. 670. It is also said that if the place of mailing and the place of payment are the same, the law of such place ordinarily governs. Corpus Juris, vol. 8, p. 90, § 151; Shoe, etc., Bank v. Wood, 142 Mass. 563, 8 N. E. 753. And it is said that, when the instrument is signed in one state and delivered in another, the contract is made in the latter. Perry v. Pye, 215 Mass. 403, 102 N. E. 653. It may be that these rules would be of value in some cases; but where the inquiry is as to what law should be regarded as the law with reference to which the contract is made, they are too entirely artificial to be of any value. Whenever technical legal propositions must be depended upon to determine where a contract is made, the place of the making of the contract becomes of even less importance than it would ordinarily be. There are a large number of cases in which contracts formally made in one place have had their validity determined by the law of another place. All of the authorities cited in support of other propositions made herein affirm the proposition that a contract may be valid, notwithstanding the law of the place of the making, or may be void, notwithstanding the law of the place of the making. The cases which dogmatically assert that the law of the place of the making will determine the validity or the invalidity of the contract can, ordinarily, be sustained as to their result by the principles hereinafter discussed, and are to be held correct, not because of the law of the place of making, but because of the concurrence at that place of the situs of other important elements which must be taken into consideration in determining the validity of the contract.

*Lex Considerationis.*

Every contract must be upon a good and sufficient consideration. If the consideration is void, the contract will not be good. The consideration is measured by the law of the place where it passed or had

its being or effect. If the consideration is there bad, it will be bad everywhere.

As stated in Akers v. Demond, 103 Mass. 318:

"Penal laws can be administered only in the state where they exist, but when a usurious or other illegal consideration is declared by the laws of any state to be incapable of sustaining any valid contract, and all contracts arising therefrom are declared void, such contracts are not only void in that state, but void in every state and everywhere."

In the excellent work on Conflicts of Law by Minor is the following (page 431):

"In determining the invalidity of the usurious contract, does the invalidity relate to the making of the contract itself, to its performance, or to the consideration? Where a contract to pay excessive interest is involved, does the usury consist in the borrower's promise to repay the principal with excessive interest, or does it consist in a loan or forbearance of money upon condition that the borrower will repay the principal with excessive interest? * * * If the first view is correct, the alleged usurious interest and invalidity of the contract to pay relates to its performance. The payment of the excessive interest and the validity of the payment of interest agreed upon should be determined by the law of the place where the act or payment is to be performed; that is, by the lex solutionis of the contract to pay. If the second view is correct, the usury relates to the consideration, the loan of the money, and the law of the place where the money is delivered to the borrower governs the validity of the contract to pay. * * * This is believed to be the better view. The policy of the usury laws is aimed against the exaction of usurious interest by the lender, not against the promise by the debtor to pay usurious interest."

It may be that the law should be as stated. It may be doubted if the propositions are sustained by the authorities. Certainly many of the authorities cannot be reconciled with the theory advanced. In only one case of the many examined is the consideration spoken of as usurious where money or other value is properly represented in the principal of the note. It is, of course, the case that the consideration of the promise to pay may be made up in part of a prior debt with usury added, as in the case of Andrews v. Pond, 13 Pet. 75, 10 L. Ed. 61; or the principal of the note may be made up entirely of usurious interest, as in the case of Scott v. Fabacher, 176 Fed. 229, 100 C. C. A. 147. Ordinarily, however, that in consideration of which the maker of the note promises to give usury is money or a thing of value, represented by the principal of the note. It is a consideration which would support a contract other than one of the kind entered into. The invalidity arises, not on account of this payment to the promisor, but on account of the agreement entered into, between him and the person furnishing the consideration, that interest in excess of that allowed by law will be paid. Ordinarily, the parties are equally guilty from a legal standpoint, the illegality arising from their joint action.

In passing upon the questions with reference to the consideration in a contract involving usury, much confusion arises from the circumstance that invalidity of the contract does not always result from the presence of usury. Where the statutes of the state define and criminally punish usury, without specifically indicating the effect of the usury upon the contract out of which it might arise, the contract will,

in accordance with the general principle of law, be properly held void. If, however, as is more usually the case, the laws of the state specifically indicate the effect upon the contract, the general rule does not apply. In some of the states the law merely prevents the recovery by the promisee of so much of the interest as may be usurious. In others, where usury is provided for or paid, all interest is uncollectable, or may be recovered if paid. In other states, if the interest is usurious, but does not exceed a certain named per cent., the interest is forfeited; and, exceeding another named per cent., the entire contract becomes unenforceable. It is manifest that where a contract which, by reason of usury, is illegal and criminal, it is to be distinguished from one where the usurious agreement of the parties merely results in defined losses.

Confusion also arises from the assumption that every character of usurious contract is to have applied to it the same rules of law. Where money is borrowed and a note is given for the amount loaned, all parts of the contract are executed except the agreement to repay the money with the interest provided. In such case the contract may be illegal, but it is not on account of the consideration passing from the promisor. The illegality results from the promise upon the part of the maker of the note to do a thing which the law will not permit. Some of the cases, however, which have been reported, and from which an effort is made to deduce legal principles, are contracts which have been substantially executed. The case of Andrews v. Pond, heretofore referred to, is of this class. In that case, one of the parties owing the other money, an amount was added to the debt ostensibly as exchange, from which usury resulted. To pay the amount, debtor drew a bill of exchange payable in another state. In such case, ordinarily, nothing would be left for the debtor to do. The transaction would, as to him, be finished, except upon a failure by the drawee to pay or accept the bill of exchange. Likewise with reference to the creditor, the transaction is complete, except as necessity for action might arise on account of the failure of a third person to accept or pay. The transaction, in the ordinary course of business, would be a completed one. In such case the consideration for the bill of exchange is usurious. It is created, passes, becomes effective where the contract is made. The very basis of the contract is illegal, and in a jurisdiction as New York, where a usurious contract is void, the necessary result of this transaction would be an agreement void as a contract—all its incidents there and everywhere void.

Typical cases representing the diversity of views with reference to the effect of the law of the place of the consideration are Orr's Admr. v. Orr, 157 Ky. 570, 163 S. W. 757 and Arnold v. Potter, 22 Iowa, 198. In the former case the law is thus stated:

"The law of the place of payment of the note ordinarily controls, but this rule is subject to exceptions. For instance, the question of the validity of the contract, as affected by the legality of the past transaction in consideration of which it was made, and in which it took its inception as a contract, is generally held to be governed by the law of the place where the transaction was had, and not where the contract was executed or to be performed."

In the latter the facts that the notes were dated in Iowa, made payable there, indorsed there, that the trustee resided there, that the security was available there alone, and that the payor resided there, controlled, notwithstanding the negotiations were in Massachusetts and the money there paid.

*Lex Loci Solutionis.*

An important element in determining the law with reference to which the contract is made is the place where it is to be performed. The law is thus broadly stated:

"When a contract is made in one country, and is to be performed in another, the proper law of the contract may be presumed to be the law of the country where performance is to take place, the lex loci solutionis." 9 Cyc. 669, and authorities cited.

Again:

"Where the contract is to be performed in a place other than that in which it is made, the parties, according to the general trend of American authorities, are presumed to adopt the law of the place of performance as the law of the contract." Hall v. Cordell, 142 U. S. 116, 12 Sup. Ct. 154, 35 L. Ed. 956; Pritchard v. Norton, 106 U. S. 124, 1 Sup. Ct. 102, 27 L. Ed. 104; Andrews v. Pond, 13 Pet. 65, 10 L. Ed. 61; Davidson v. Browning, 73 W. Va. 276, 80 S. E. 363, L. R. A. 1915C, 976.

With reference to bills and notes it is said:

"Where a bill or note is executed in one state and made payable in another, the general rule is that it is governed, as to its nature, validity, interpretation, and effect, by the law of the state or country in which it is payable." 8 Corpus Juris, p. 92, § 153; Wiseman v. Chiapella, 23 How. 368, 16 L. Ed. 466; In re Quality Shop, 205 Fed. 266, 125 C. C. A. 403; Dickinson v. Edwards, 77 N. Y. 573, 33 Am. Rep. 671; Tenant v. Tenant, 110 Pa. 478, 1 Atl. 532; Mayer v. Roche, 77 N. J. Law, 681, 75 Atl. 235, 26 L. R. A. (N. S.) 763; Bigelow v. Burnham, 83 Iowa, 120, 49 N. W. 104, 32 Am. St. Rep. 294.

The authorities cited sustain the propositions which have been made. It is to be noted, however, that the propositions as made carry the inference of exceptions and limitations. The cases in which the validity of the note has been determined by the law of a place other than the place of payment establish that while the place of payment is an important element in determining the law to which the contract must be referable, it is, in no sense, a conclusive element.

*Law of the Place Where the Land Mortgaged to Secure the Debt is Situate.*

The general proposition is that usury inheres in the loan and not in the security given; but since the intent of the parties is an element in determining to what law the contract is referable, and since the situs of the land being necessarily the place of the remedy, the law of the forum must be taken into consideration; and, since the security is an important part of the contract of loan, the situs of real estate mortgaged to secure the debt is an important element to be considered, in connection with others, in determining the law with reference to which the contract should be held to have been made. 39 Cyc. 905; Bedford v. Bldg. Ass'n, 181 U. S. 227, 21 Sup. Ct. 597, 45 L. Ed. 834; Commercial Bank v. Auze, 74 Miss. 609, 21 South. 754; Manhattan Life Ins.

Co. v. Johnson, 188 N. Y. 108, 80 N. E. 658, 9 L. R. A. (N. S.) 1142, 11 Ann. Cas. 223; Gault v. Equitable Co., 100 Ky. 578, 38 S. W. 1065.

"The law of the place where the land is situated, where the note is secured by mortgage, generally does not govern, except in case of a conflict as to usury laws." 8 Corpus Juris, § 158, p. 94.

Except, as stated, in case of conflict in usury laws, the law of the state in which the mortgaged land is situate does not govern, and does not govern then in all such cases; the situs of the security is, nevertheless, an important element in determining the law with reference to which the contract is made.

"The inference that the parties contracted with reference to the law of the domicile of either of them is greatly strengthened when some important element of the transaction is located at the residence of such party, such as the execution of the note or other security, or the payment of the consideration, or when the loan is secured by a mortgage on land in the state of the party's residence." 39 Cyc. 904; Sheldon v. Haxtum, 91 N. Y. 124; Vliet v. Camp, 13 Wis. 198; Fidelity Savings Co. v. Shea, 6 Idaho, 405, 55 Pac. 1022; Hubble v. Morristown Land Co., 95 Tenn. 585, 32 S. W. 965.

## The Place of Use.

The place where the money borrowed is to be used is an element in determining the law with reference to which the contract was made. The usury laws are based, at least in part, upon a consideration of what the financial conditions of the state in which the law is passed will justify in the way of interest, and what interest would, under conditions existing, be regarded as too large. If in the state where the money is to be used the lawmaking power regards 10 per cent., for instance, as a rate of interest which the conditions justify, and the payment of which would not violate public policy, the contract ought rather to be measured by the laws of that state than by the laws of the state where the lawmaking power conceives that the payment of interest in excess of 7 per cent. is contrary to public policy. While the cases have not especially dwelt upon the law of the place where the money is to be used, it would appear to be a matter of very much more importance than the place named in the note as the place of payment, or the place which is indicated by the date of the instrument as the place where the money loaned was paid over to the borrower; for frequently the use to be made of the money is the inducing cause of the contract, and it is frequently in contemplation that the note is to be paid from the profits of the use of the money in some business enterprise. The business conditions at the place where the money is to be used are proper subjects for inquiry and for consideration in determining the loan, and in determining what the loan can afford to pay in the way of interest. The general proposition made is sustained by the cases of National Bldg. Ass'n v. Burch, 124 Mich. 57, 82 N. W. 837, 83 Am. St. Rep. 311; Cope v. Wheeler, 41 N. Y. 303; 39 Cyc. p. 908.

## The Intention of the Parties as to the Applicable Law.

One of the factors in determining the law with reference to which the contract is made is the law in contemplation by the parties. It is not infrequently the case that the contract contains a stipulation with

reference to what law should govern. This stipulation is not necessarily effective, and, indeed, not necessarily a reflection of the minds of the parties. The parties cannot, by intention or stipulation, change the essential character of the transaction between them; they cannot, by intention or stipulation in all cases, determine the law to be applied. They cannot, by stipulating that the law of a particular state shall govern, thereby make that valid which would otherwise be illegal. But where there is a diversity in the situs of the several elements entering into the contract or its performance, the stipulation or understanding of the parties may have an important, or even a controlling, effect. The parties may not, however, disregard the place of making, the place of performance, and the place of enforcement, and select for themselves a system of laws that has no relation to either of these places, and thereby nullify or evade the provisions of the law which would otherwise be applicable.

"When the several transactions connected with the loaning of money have taken place in two or more states. the problem of determining what law shall govern, in deciding whether the contract is usurious or not, is largely one of ascertaining what law the parties had in mind in fixing their rights under the contract." 39 Cyc. p. 891.

"In many cases the courts have declared that the law of the place where the contract is made determines the rights of the parties, without reference to intent. In nearly all instances where this holding has been made, the important elements of the transaction had their situs in the place where the contract was made." Junction R. Co. v. Ashland Bank, 12 Wall. 226, 20 L. Ed. 385.

*Lex Fori.*

There is no occasion to develop in detail the principles by which the courts called upon to enforce contracts made elsewhere, or to be performed elsewhere, or where the consideration arises elsewhere, are to be governed. The only present consideration is with reference to the law of the forum as an element in determining the law with reference to which the contract must be held to have been made. Necessarily the parties in entering into contracts must be assumed to give some consideration to the laws of the state in which the contract is to be enforced. While it may not always be possible to determine at the time of the making of the contract as to where it will be necessary to institute suit, in case of a failure of the promisor to perform, yet the place of payment and the residence of the payor, or the location of the land given as security, can very well be considered by the parties as probably indicating the place of suit, in case suit should be necessary. In consideration of these facts it should be held that the laws of such a state were necessarily in contemplation by the parties, and necessarily an element to be considered in determining the applicable law.

"In general, the law of the forum, being also that of the place where the landed security lies, will prevail over the place of the contract to defeat the instrument." 8 Corpus Juris, § 165, p. 97; Flagg v. Baldwin, 38 N. J. Eq. 219, 48 Am. Rep. 308.

"While, as a general rule, a contract valid where it is made, or under the law with reference to which it is made, is valid everywhere, the courts of one state will not enforce a contract made in another, where to do so would

be in violation of their own statutes." International Harvester Co. v. McAdam, 142 Wis. 114, 124 N. W. 1042, 26 L. R. A. (N. S.) 774, 20 Ann. Cas. 614.

*Application of the Facts.*

An effort will be made to apply the facts of this case to the law as announced in the foregoing propositions. V. L. Crawford, a citizen of Mississippi, was conducting a bleachery business at Meridian, in that state. The Smith Company, doing business in Pennsylvania under a New York charter, contracted to furnish linters to munition makers, and undertook to supply the linters through Crawford. Crawford's facilities being inadequate, the Smith Company made loans to him to enable him to carry out the contract with them. In December, 1914, while owing the Smith Company about $11,000 unsecured, Crawford applied for an additional loan of $10,000, offering his plant as security. During the course of negotiations, carried on by wire and mail, the application was increased to $25,000. As a part of these negotiations, Crawford offered reduction in the prices at which he was to furnish linters, one of these proposed reductions being in consideration, not alone of the loan, but on account of delays which had taken place in deliveries. Some money was paid as the negotiations took place, and, before their consummation, officers of the Smith Company went to Meridian, investigated the property offered as security, and determined to make the loan, and then made a statement to that effect to Crawford. Crawford was authorized to execute notes and a mortgage upon the property to be taken as security, the instruments being prepared by attorneys for the Smith Company in Meridian. The notes and deed of trust having been executed, they were sent through the mail by the bank at Meridian, with draft attached for the balance unpaid of the amount loaned, $9,700. The draft was paid and the notes and deed of trust taken up by the Smith Company at Philadelphia.

The primary question in determining the law to which the contract is referable is where the contract was made.

The making of the contract consisted of a number of elements, and these elements did not all have the same place. In the negotiations by mail, that which was done by Crawford had its locus at Meridian; that which was done by the Smith Company had Philadelphia for its place. The verbal negotiations took place at Meridian; the representatives of the company there determined to make the loan. The formal action of the Smith Company was at Philadelphia. The deed of trust was executed at Meridian; the property affected by the deed of trust was in Mississippi. The money was paid by drafts which were placed in bank in Meridian by Crawford, which drafts were transmitted through the mails to Philadelphia to another bank, where they were paid, and the proceeds paid over to Crawford in Meridian. The notes were executed in Meridian, transmitted by mail to Philadelphia, and there retained by the Smith Company. The deed of trust was transmitted by mail to Philadelphia, and returned by mail to Meridian for record. It would not be possible to name any one state in which this transaction took place.

If it be possible, under the facts stated, to determine, as matter of law, by the application of technical legal presumption, the place of the

making of the contract, the circumstances are such as to make the place at which it might be said to have·been consummated an unimportant and almost immaterial matter.

With reference to the place of the 'consideration, almost the same difficulties appear. If the illegality of the contract may be referred to the consideration, the same character of difficulty arises as in determining the place where the contract was made. The charge of usury is based upon changes in contracts theretofore existing between the parties, which had been entered into, and which were to be performed in Mississippi. The changes were negotiated by wire and letters passing between Meridian and Philadelphia, and by personal negotiations in Mississippi. So far as the actual payment of money is concerned, a part of it was already in possession of the maker of the notes in Mississippi when the contract was consummated; 'the payment of the balance was through the banks and through the mail, the actual process of payment involving action in Mississippi and Pennsylvania and in all of the states between. As to the original source from which the money came, the record is silent—whether New York, the legal residence of the Smith Company, or Philadelphia, from which point the correspondence with Crawford was carried on, does not appear. If the consideration was affected with usury by the demand of the Smith Company for interest in excess of that allowed by law, the same questions arise as in determining where the contract was made, for the demand was made in both states and by mail and wire. It may or not be important that the propositions for the payment of money in excess of that permitted by law were primarily made by Crawford in Mississippi, and his final agreement with reference to them was there expressed, and, so far as actually executed, executed there.

The elements which are definitely fixed in Mississippi are: (1) The place of performance—that is, the place where the notes were to be paid; and also the place where the deductions in price on contracts constituting usury were to be made was Mississippi. (2) The property upon which a lien was given to secure the payment of the principal and 6 per cent. of the interest was situate in Mississippi. (3) The money borrowed was borrowed for use in Mississippi, and it was expected that it would be repaid out of the conduct of the business established there, into which the money was put. (4) It was contemplated that, in case of nonperformance of the contract by the promisor, the remedy of the promisee would be in Mississippi. The deed of trust could not be made effective elsewhere than in that state; no personal judgment against Crawford could be secured except in that state; if procedure in the courts, rather than by the trustee, was found necessary, this procedure would necessarily be in Mississippi.

While, as heretofore suggested, the mortgage is, in a sense, an incident to the debt, yet it sometimes, as in the present case, becomes the incident of paramount importance. The debt may be entirely valid, and yet entirely worthless without the security of the mortgage. That is the condition in this case. Except so far as the land secures it, the debt is without value. The contract would not have been made without the mortgage. Entirely regardless of any other ·principle

which inheres in that branch of the law, which is ordinarily spoken of as "conflict of laws," it is certainly the case that every contract with reference to land within any certain jurisdiction must have its validity, in so far as the land is concerned, tested by the laws of that jurisdiction.

The only elements that could possibly enter into the question as to the law with reference to which the contract was made that are not definitely fixed in Mississippi are the place of negotiations, which were conducted principally in Mississippi and through the mails and by wire; the consideration, the situs of which is indefinite; and the place of the making of the contract every part of which had been in Mississippi, except the formal receipt of the evidences of debt by the promisees in Pennsylvania.

The element which has not been specifically considered is the intention of the parties. The same circumstances which indicate the law with reference to which the contract should be determined carry with them the conclusion that it was the intention of the parties that the contract should be subject to the laws of Mississippi; and therefore little is to be added to the argument by a statement to the effect that the parties intended that it should be measured by the laws of that state.

The maker of the notes in the present case was, at the time of their execution, a citizen of the state of Mississippi. The debt was secured by property which could be held nowhere other than in the state of Mississippi; no relief, either by a proceeding in rem or in personam, could be had in any other state. The contract suggesting nothing to the contrary, it would appear to be reasonable to assume that the parties intended their rights to be determined by the laws of the only state which could be appealed to for a remedy. No reference was made in any of the correspondence, or in any verbal negotiations with reference to which there is testimony, to any fact indicating a purpose on the part of the negotiators to fix upon a place whose laws should measure their contract. In the absence of anything more definite, it would seem that there are three factors in the present case which might be taken into consideration in an effort to determine the law in contemplation by the parties: (1) The notes were made payable in Mississippi; (2) the money was to be used in Mississippi; (3) the debt was secured by property in Mississippi. It was known by all of the parties to the transaction that the collection of the money, whether in the course of business or through the trustee, or through the courts, would have to be made in the state of Mississippi. It is not assumed that with a knowledge of this fact, and in the complete absence of anything so indicating, that the parties intended to make their Mississippi transaction dependent upon, or in any sense governed by, the laws of the state of Pennsylvania. A much more ordinary course of business is for bonds or bills and notes or other negotiable instruments to be made payable at the place of business of the parties lending the money or purchasing the negotiable instruments. When this ordinary course of business is departed from, that circumstance alone is not without weight in suggesting that the parties purposed to

make the place of payment the place whose laws should measure the obligations of the contract.

There are a number of adjudicated cases where the place of the making of the contract and the source of the consideration—that is, the source of the money loaned—are not subject to the same uncertainty as in the present case, where the conclusion has been reached that facts less convincing than those which appear in this case fix as the law of the contract the law of a state other than that of the making and of the consideration.

In Arnold v. Potter, 22 Iowa, at page 198: Notes were dated in Iowa; made payable in that state; the trustee resided there; the real estate security was situated there; the payor resided there; notes were negotiated in Massachusetts and the money there furnished. The contract was held to be governed by the Iowa law.

In the case of Scott v. Fabacher, 176 Fed. 229, 100 C. C. A. 147, the source of the consideration—that is, the money loaned—was Louisiana, and the place of payment was Louisiana, and the negotiations were carried on partly by mail; but the transaction in which the money was used, and out of which it was assumed the profits would arise justifying the payment of usury, and the land given as security for the payment of the principal and the usurious interest, were in Texas. Notwithstanding the fact that both the consideration and the place of performance was a state other than Texas, the essential character of the transaction as a Texas contract was recognized, and the interest was forfeited under the laws of that state.

Sheldon v. Haxtun, 91 N. Y. 128: The defendant, who resided in Illinois, collected money due to plaintiff, who resided in New York, from parties in Illinois, and, instead of remitting the proceeds, sent through the mail his own note for the amount, specifying a rate of interest usurious in New York. The court says:

"Upon depositing the notes in the mail the transaction was complete. * * * The defendant became the borrower of the proceeds of the notes collected by him. The fact that one of the notes was expressly payable in New York does not distinguish it, in the point of usury, from the others. This was an incidental circumstance, and does not overthrow the other decisive circumstances which make Illinois the place of contract."

Staples v. Nott, 128 N. Y. 403, 28 N. E. 515, 26 Am. St. Rep. 480: The note was dated at Washington, made payable at a bank in New York, bearing interest illegal in New York given to take up another note dated at Washington and payable there. The arrangement for renewal was made in Washington and the note drawn there; it was there handed to the maker to execute. He took it to his home in New York, where he signed it. The note was then mailed to plaintiff at Washington. It was held that the contract evidenced by the note was made in and governed by the laws of the District of Columbia; that the affixing of signatures by maker and indorser was simply details in the performance and execution of the contract, which was consummated when the note was received by plaintiff; that the naming of a New York bank as the place of payment did not make it a New York contract.

Wayne County Savings·Bank v. Low, 81 N. Y. 570, 37 Am. Rep. 533: Note was dated and made payable in New York, but was made for the purpose of being used in renewal of another note for the same amount then held by plaintiff, a bank in Pennsylvania. It was actually written in Pennsylvania, in the form in use in that state, by the cashier of plaintiff, at the defendant's request, and forwarded to the defendant for signature, and signed by him in New York and mailed to plaintiff in Pennsylvania, together with a check for the discount. The note and interest were received by plaintiff in Pennsylvania, and all was done in performance of a previous agreement entered into in Pennsylvania. Says the court:

"It cannot be contended that a party who goes into another state, and there makes an agreement with a citizen of that state for the loan * * * * of money, lawful·by the laws of that state, can render his obligation void by making it payable in another state according to whose laws the contract would be usurious. Neither can it be claimed that because the obligation, instead of being signed in the state where the contract was made, is signed in another state and sent by mail to the place of contract, it must be governed by the usury laws of the place where it was signed."

Martin v. Johnson, 84 Ga. 487, 10 S. E. 1092, 8 L. R. A. 170: The note was given for· a larger amount than actually received; was payable in Boston, from which place the money was sent. The court says:

"The parol agreement out of which the notes sued on sprang was made in this state [Georgia]. Part of that agreement was performed in this state. The usury set forth in defendant's pleas was paid in this state; and all that was left to be performed of that agreement ·was the payment of the notes sued on in this state. The maker of these notes resides in this state, and the land which was conveyed as security is located in this state. Whether a contract is made with reference to the place, or state, or country in which it is to be performed is a question of no easy solution. However this may be, there is enough in this case to show that, in all likelihood, the parties to the contract sued on contemplated the law of the domicile of the maker as the law which should govern this contract in all respects."

In Kilcrease v. Johnson, 85 Ga. 600, 11 S. E. 870, upon similar facts a like ruling was made.

United States Saving & Loan Ass'n v. Scott, 98 Ky. 695, 34 S. W. 235: The note was dated at St. Paul, Minn., was payable at Minneapolis, and contained a provision to the effect that it was understood to be made with reference to and under the laws of the state of Minnesota. It was given, however, to a building and loan association doing business in Kentucky under a permit, and represented by agencies to solicit and transact business, and the maker of the note became a member of the association there. The note was secured by a mortgage on real estate in Kentucky. It was held to be a Kentucky contract and void as usurious.

Southern Building & Loan Ass'n v. Harris, 98 Ky. 41, 32 S. W. 262: The loan was made at Knoxville, Tenn., to a resident of Kentucky, and the notes were made payable at Knoxville. The court says:

"The subscription for stock * * * was made in Kentucky; the application for the loan written and signed here; the note dated, written, and signed here, and the mortgage made to secure the payments for this stock;

and thus the payment of the loan made was written, dated, executed, acknowledged, and recorded in Fayette county, Ky."

The court held the notes usurious under the laws of Kentucky, and refused judgment upon them.

Kellog v. Miller (C. C.) 13 Fed. 198: Though the contract was negotiated in New York, and the lender a citizen of that state, and the money there paid, it was held to be a Nebraska contract, because executed in that state, and secured by a mortgage on land there, the obligor being a resident of that state, notwithstanding no place of performance was named.

Rowland v. Bldg. & Loan Ass'n, 115 N. C. 825, 18 S. E. 965: The obligation for the money was sent to the office of the association in Richmond, Va., and the money was sent from that place. The borrower, however, was a resident of North Carolina, and made his application from that state. The money was paid to him there, he secured the payment by a mortgage on land situated there, and the mortgage was executed there. The obligation was held usurious, notwithstanding it was valid under the laws of Virginia.

Duncan v. Helm, 22 La. Ann. 418: The parties resided in Mississippi, where the negotiations were had. The notes were payable in Louisiana, and secured by a mortgage on lands there situate. The actual execution was in Louisiana, and they were there delivered to the representative of the lender, by whom the money was paid by a bill on New Orleans. The contract was held to have been intended to have effect in Louisiana.

Falls v. U. S. Company, 97 Ala. 417, 13 South. 25, 24 L. R. A. 174, 38 Am. St. Rep. 194: The note was payable in Minnesota, and recited that it was made with reference to the laws of that state. It was secured by a mortgage on land in Alabama, and drew a rate of interest in excess of that permitted in that state. The obligation was made through a local agent of the complainant in Alabama, and the money received from Minnesota was paid in Alabama. The court held that no state will enforce contracts or redress grievances entered into or suffered in another state, if the enforcement involve a breach of legal or moral right as maintained in the law of the forum, and refused to enforce the contract as to so much of it as was in conflict with the law of Alabama.

Thompson v. Edwards, 85 Ind. 420: The Supreme Court cited and approved Rorer on Interstate Law, to the effect that a note made in one state, secured by a mortgage on lands in another, made for money loaned by a citizen of a third state, and delivered to him in the state where the contract of loan was agreed to, was held to be legal and enforceable in the courts of the state where the land was situate, and where the debtor resided at the time of making the contract, although a greater rate of interest was called for than allowed by the law of the state where the contract was agreed on and the instrument delivered, although in such latter state a forfeiture of the debt is incurred for usury; the ruling being that the whole transaction had reference to the laws of the state where the land was situate, the debtor resided, and the

instruments made, although the instruments were delivered elsewhere, and notwithstanding, also, that the notes were made payable in a still different state than that wherein they were given or delivered, or wherein either party resided.

## Contract Illegal in Place of Making and Performance.

In Miller v. Tiffany, 1 Wall. 298, 17 L. Ed. 540, it is said:

"The general principle in relation to contracts made in one place to be performed in another is well settled. They are to be governed by the law of the place of performance, and, if the interest allowed by the law of the place of performance is higher than that permitted at the place of contract, the parties may stipulate for the higher interest without incurring the penalties of usury. The converse of this proposition is also well settled. If the rate of interest be higher at the place of the contract than at the place of performance, the parties may lawfully contract, in that case also, for the higher rate."

See, also, Bedford v. Eastern Bldg. & Loan Ass'n, 181 U. S. 243, 21 Sup. Ct. 597, 45 L. Ed. 834; R. R. Co. v. Ashland, 12 Wall. 226, 20 L. Ed. 385; Scotland County v. Hill, 132 U. S. 107, 10 Sup. Ct. 26, 33 L. Ed. 261; Cromwell v. Sac County, 96 U. S. 57, 24 L. Ed. 681; Cockle v. Flack, 93 U. S. 344, 33 L. Ed. 949.

The principles just stated are not universally recognized, or, at least, not applicable in all cases, as indicated by the cases just reviewed. Undoubtedly, the courts will go far to defeat the claim of usury, especially where the consequences are completely fatal to the contract.

Where the contract conflicts, both with the law where it was made and the law where it is to be performed, the principles just announced can have no application, and it becomes increasingly difficult and increasingly important to determine the law with reference to which it was made.

The contract here under consideration is, in part, at least, invalid, both under the laws of Pennsylvania and under the laws of Mississippi. In both states a rate of interest is fixed which it is illegal to exceed.

Where the consequences of the infraction of the law in the place of the making are comparatively unimportant, and the consequences in the place in which the contract is to be performed are the complete avoidance of the contract, it is not to be assumed that the courts of the place of performance, if they are also those of the place of the remedy, will acquiesce in the limited consequences of the law of the place of the making of the contract.

"The law, however, is usually thus stated: When the contract is found to be usurious, both by the law of the state where it is made and by that in which it is payable, the parties are law-breakers in any event, and can scarcely be allowed to choose their own penalties. By the weight of authority the general rule applies that the law of the place of the contract governs." 39 Cyc. p. 908. U. S. Mortgage Co. v. Sperry (C. C.) 24 Fed. 838; Jewell v. Wright, 30 N. Y. 259, 86 Am. Dec. 372.

The proposition that where a contract is usurious, both by the law of the place where the note is made and of the place where it is to be paid, the consequences are to be measured by the law of the place of

making, is based upon expressions in Andrews v. Pond, 13 Pet. 75, 10 L. Ed. 61. This is not a proper inference from the cited case. The language there is as follows:

"Now if this defense is true (that is, that usury was concealed under the name of exchange, in order to evade the law), the question is not which law is to govern in executing the contract (that is, the law of New York, where the bill of exchange was drawn, or of Alabama, where it was to be paid), but which is to decide the fate of a security taken upon an usurious agreement, which neither will execute. Unquestionably it must be the law of the state where the agreement was made and the instrument taken to secure its performance. A contract of this kind stands on the same principles with a bona fide agreement made in one place to be executed in another. In the last-mentioned cases the agreements are permitted by the lex loci contractus, and will even be enforced there if the party is found within its jurisdiction. But the same rule cannot be applied to contracts forbidden by its laws and designed to evade them. In such cases the legal consequences of such an agreement must be decided by the law of the place where the contract is made. If void there, it is void everywhere; and the cases referred to in Story's Conflict of Laws, 203, fully establish this doctrine."

It is manifest that if the agreement is void on account of the law of the place where it is made, and not saved from illegality by the circumstance that it was the bona fide intention of the parties for the contract to be performed elsewhere, or otherwise, it can have no effect as a contract, and the consequence arises out of the law of the place of making, and must have its effect everywhere. Frequently, however, the laws with reference to usury present cases where, though the contract may be in violation of the law of the state in which it is made, and also in violation of the law of the state in which it is to be performed, the contract cannot be said to be void in either state. It merely has consequences different from those contemplated by the parties. For instance, it is sometimes the case that the state in which the contract is made will enforce the contract, except as to the excessive interest; and that in the state in which the contract is to be performed the law will enforce the contract as to the principal, but will not permit the recovery of any part of the interest. In such a case the reason upon which the rule in Andrews v. Pond is predicated does not exist. The contract cannot be said to be void by the laws of the state in which it was made; therefore the consequences which follow from voidness do not result in that state nor elsewhere. The general proposition is that if the note be given in one state, where it would be valid, but is to be performed in another, where the contract would be usurious, it would be governed by the laws of the latter state. It would be an absurd consequence to suggest that where the laws of the state where the contract is made provide for a forfeiture of a part of the contracted interest, that forfeiture would alone take place, and that the larger forfeiture, resulting from the laws of the place of payment, would not take place; but that, if the contract were entirely valid in the state in which it is made, the larger forfeiture of the state in which payment is to be made would result. In other words, the consequences in the case assumed would be more serious if the contract was made in a state where it would be entirely valid than in the state where the laws would forfeit a part of the interest. A specific appli-

cation to the facts of the present case still more clearly shows the illogical results of the proposition. It will be assumed that the interest contracted for in this case exceeds 20 per cent. Under the proposition criticized, and assuming that the contract was made in Pennsylvania, the Pennsylvania law providing for a forfeiture of the excess interest, the interest to the extent of 12 per cent. would be forfeited, and no other consequences would follow. If, however, the laws of Pennsylvania had permitted the making of the contract, the result would be that the law of the state of Mississippi, where the payment was to be made, would apply, and that law providing that if the interest is as much as 20 per cent. the entire debt is to be forfeited, the result would be that the plaintiff would lose all of his debt. The consequences are absurdly illogical.

The rule, however, as announced in Andrews v. Pond is entirely logical. If the contract is void it is necessarily void everywhere, and no consequences, other than those which result from the absence of a contract, could take place where the agreement was made or elsewhere.

A consideration of the facts hereinbefore recited, and of the authorities noted and many others, leads to the conclusion that the contract here under investigation should be held made with reference to the laws of Mississippi, and the laws of that state should govern in determining the rights of the parties to this suit.

*Enforcement of Usury Laws by Federal Courts.*

Courts of one state will not enforce or otherwise administer the criminal statutes of another; nor will the courts of the United States enforce any criminal statutes, except those of the United States. These propositions must be limited by their application to the relations between the state and the person accused of violating her laws. As between two individuals whose contractual relations are affected by the criminal statutes of the state, the courts of another state, or the courts of the United States, will administer the resulting legal rights as they would rights arising in any other way. To illustrate: If the criminal statutes of the state forbid the doing of a certain thing, and a contract is entered into between individuals in violation of such a statute, the statute will be taken into consideration by the courts of another state having jurisdiction of the subject-matter, or by the courts of the United States, in a case within their jurisdiction. It may be that the result of the criminal statute would be to make the contract under consideration void; if so, the court of the other state or of the United States would so declare. It may be that the criminal statute would have a lesser effect by declaring the contract void in part, and indicating the extent, in which case the remedy would be commensurate with the right.

The principles which have thus been announced have peculiar application to the laws of usury. In a number of states the receipt of usurious interest is made a crime and punished as such. Such a punishment will, of course, be inflicted alone by the state passing the law. If in such a state, no other consequences being indicated than the punishment of the persons entering into the usurious contract, such a con-

tract was under consideration by a federal court or the courts of another state, the contract would be regarded as and declared to be void; and a person suing upon such a contract would, in the federal court or the court of the other state, be refused relief upon his contract. If, however, the usury laws of the state did not stop with a mere declaration of the criminal character of such contracts, but undertook to indicate what would be the result upon the contract itself, this latter provision would fix and determine the rights of the parties and the federal courts or the courts of another state having before them such rights would accordingly adjudicate. In the instant case the parties have by their contracts fixed their rights as between each other. If the contracts are usurious, these rights are not as declared in the instruments which have passed between them, but are modified by the laws of the state to which those contracts are subject. The courts of the United States having jurisdiction of the parties will administer their rights as these rights have been fixed by the laws of the state under which the contract was made.

The conclusion having heretofore been reached that the contract under consideration should be governed by the laws of the state of Mississippi, the next inquiry which arises is whether the contract is usurious, and the extent to which it is usurious. In determining whether or not the contract is usurious, the inclination of courts is to assume that the parties did not intend to violate the law. The instrument will be so construed as to save the contract from illegality if possible. If the facts which are assumed to constitute usury are outside of the written instrument, such a construction or interpretation of them will be given as will, if possible, bring about a like result. These rules, however, will not be permitted to negative the plain language and purpose of the law; nor will the mere absence of an intent to violate the law excuse the persons entering into the usurious contract from the consequences of acts which constitute a violation of the law. In order to constitute usury, it is not necessary to have a corrupt intent as distinguished from the intent presumed from the acts which constitute the usury. Applying these rules to the instant case, it may very well be concluded that there was no intention upon the part of Oscar Smith & Sons Company to violate the law. There was no corrupt purpose in the doing of that which is here under investigation. This is indicated by the manner in which the parties have testified. Nevertheless it is the fact that they have received, as compensation for the use of money, values in excess of the rate which may be charged in Mississippi without violating the law. They intended to do the things which constitute a violation of the Mississippi law, and they are therefore chargeable with the illegal intent contemplated by the usury statute.

The extent to which usury has been contracted for becomes the next question. If the interest exceeds 10 per cent., but does not exceed 20 per cent., the consequence of the usurious contract is that all interest will be lost. If the interest contracted for is 20 per cent. or more, the entire debt is lost. That is to say, if the parties have entered into a contract by which the promisee is to receive for the use or forbearance of money a sum equal to or in excess of 20 per cent. per annum

of the amount borrowed, there can be no recovery by the promisee; and if anything has been paid upon the contract, the promisor can recover.

When the negotiations were begun between Crawford and the Smith Company which resulted in the loan by the latter of $25,000 to the former, Crawford was already indebted to the Smith Company in the amount of about $11,000. There was also subsisting between them at the time two contracts, one to the effect that Crawford would do the bleaching for the Smith Company of the linters required by the latter for filling the contract with the Dupont Company at 3⅛ cents per pound, and a contract by which Crawford would furnish to the Smith Company linters to carry out a contract of the Smith Company with the Anglo-American Cotton Products Company at 11¾ cents per pound. There was also a controversy between them as to responsibility for damages to a shipment of linters. It appears also that there had been delays in the filling of the Dupont contract, for which Crawford was responsible. When he began the negotiations for the loan of money, he suggested that he would reduce the price of the linters to be used in filling the Dupont contract one-fourth cent per pound, and that he would discharge the claim for the damaged linters, amounting to about $225. The price concession, according to a letter from Crawford, was "in appreciation of your good offices." He further wrote:

"I am offering, in the nature of a personal appreciation of your services, and to further compensate for the famous delay in Dupont production, to make a reduction of ¼ c. per pound."

Crawford was then applying for a loan of $10,000. Subsequently, when he undertook to increase the amount of the loan, he proposed to make a deduction of one-fourth cent per pound on the linters required to fill the American Products Company contract as a part of the compensation to the Smith Company for the money. The Smith Company, in agreeing to make the loan, suggested that, in so far as the Dupont contract was concerned, the concession ought to extend to linters bleached in December, the difference in the price amounting to something in excess of $500. As a part of the negotiations the parties corresponded with reference to the discharge of the debt then existing, and it was first proposed by Crawford that it be discharged by making deduction of $200 from each draft attached to bills of lading for linters shipped to the Smith Company. The amount of this was subsequently reduced to $100 for each shipment.

Counsel for the Smith Company insists that the deductions made from the drafts attached to the bills of lading were the same as the concessions made in the price of linters to be furnished upon the Dupont and American Products Company contracts, and they insist that these concessions upon the price were applied to the discharge of the previous indebtedness and were not inducements to the new loan. But this court is, of course, compelled to determine cases upon the records; and it would be entirely impossible for any one to study the record and conclude that the deductions made from the drafts attached to the bills of lading and the concessions made with regard to the price are the

same. If the facts are as appellees' counsel insist, the evidence has been unhappily placed before the court.

Applying the rules with reference to the attitude of courts towards usurious contracts, it should be held that the allowance of the claim of $225 was upon the merits of the claim, and had no relation to compensation for the use of the money. In making the proposal to reduce the price of the linters to fulfill the Dupont contract, Crawford included as the reason for making the concession, not alone the making of the new loan, but compensation for the delay in filling the Dupont contract. There is no way of determining how much of this is referable to the one and how much to the other; and, applying again the rules just referred to, the whole of the item should be rejected as compensation for the use of the money. The concession on the American Products Company contract had no relation to anything except the new loan. The amount of linters to be furnished under this contract was definite, and the time within which it was to be furnished was definite, and the amount which was to be paid by the Smith Company under the contract as it had been and as it was, as the result of negotiations for the loan, was susceptible of definite determination. This amount, $1,200, should be regarded in determining the extent to which usury entered into the contract. The items to be considered, then, would be the 6 per cent. interest provided for in terms by the written contract, and the amount of $1,200, agreed to be deducted on this contract. The circumstance that the contract was not carried out, and that no deduction in fact was made, is entirely immaterial, as usury is predicated, not upon payments of excessive interest, but upon the contracts to pay.

Counsel for the parties have disagreed as to the manner in which the calculation should be made in determining whether or not usury was paid or contracted to be paid. There should be no difficulty about this. The contract provides for the payment of $2,000 in two months, $2,000 in three months, and $3,000 each month thereafter to the tenth month. In addition, interest was actually paid on the money advanced prior to the execution of the notes and deed of trust. By adding to the interest payable on the notes from date until maturity the interest actually paid and the $1,200 promised to be paid on the American Products Company contract, the total amount chargeable as interest may be ascertained. If, calculating at the rate of 20 per cent. per annum from the same dates to the same maturities (including the period covered by the advances as to the amount of the advances), the amount ascertained is in excess of the interest stipulated in the note, plus the interest paid on advances, and plus the $1,200, the interest provided by the contract will be less than the 20 per cent. necessary to avoid the contract. If, calculating interest at 10 per cent. from the same dates to the same maturities, the amount ascertained is less than the stipulated rate, plus interest paid on advances, and plus the $1,200, then the legal rate will be exceeded, and no interest will be recoverable under the law. The interest as stipulated amounted to $785. The only interest paid on advances which the record disclosed is $85. The interest stipulated, the interest paid on advances, and the $1,200 amount

to $2,160; the interest, calculated at 10 per cent., is $1,616.66; the interest, calculated at 20 per cent., is $3,233.33. It is apparent that the amount contracted to be paid by Crawford to the Smith Company for the use of the money (eliminating the items paid partially for some reason other than the use of the money) amounts to more than 10 per cent. and is less than 20 per cent., and the result is that there should be no recovery for interest; and that, in fixing the amount due and secured by the deed of trust, all interest stipulated for should be eliminated, and all interest actually paid on the advances and on the notes paid should be deducted.

The cause should be remanded for proceedings in conformity herewith.